Su Inn HO, Appellant,

v.

The UNIVERSITY OF TEXAS
AT ARLINGTON, et al.,
Appellees.

No. 07–98–0062–CV.

Court of Appeals of Texas,
Amarillo.

Nov. 4, 1998.

Su Inn Ho, Arlington, pro se.

Dan Morales, Atty. Gen., Craig Carter, Asst. Atty. Gen., Austin, for appellees.

Before BOYD, C.J., and DODSON and QUINN, JJ.

BOYD, Chief Justice.

In this appeal, appellant Su Inn Ho (Ho), acting *pro se*, challenges a summary judgment in favor of the University of Texas at Arlington (UTA), Bob F. Perkins, Richard B. Timmons, Krishnan Rajeshwar, and Reed Blau, appellees. In the suit giving rise to the appeal, Ho alleged numerous causes of action arising out of her failure to receive her doctoral degree from UTA. In five points, she asserts the trial court erred in granting appellees' plea to the jurisdiction and motion for summary judgment, in sustaining appellees' objections to her summary judgment evidence, in delaying the trial date in order to further consider appellees' motions, and in taxing court costs against her. For reasons we later recount, we affirm the trial court judgment in part and sever, reverse and remand in part.

█ Initially, it is well settled that *pro se* litigants are held to the same standards as licensed attorneys and they must comply with applicable laws and rules of procedure. *Greenstreet v. Heiskell,* 940 S.W.2d 831, 834 (Tex.App.—Amarillo 1997, no writ), *reh'g denied,* 960 S.W.2d 713 (per curiam). The rationale for the rule is that if *pro se* litigants were not required to comply with applicable procedural rules, they would be given an unfair advantage over litigants represented by counsel. *Id.* at 835 (citing *Mansfield State Bank v. Cohn,* 573 S.W.2d 181, 184–85 (Tex.1978)).

In August 1982, Ho enrolled as a graduate student at UTA to study chemistry. Nearing graduation in 1984, Ho decided to continue and seek a Doctor of Applied Science from UTA. Over the next five years, Ho was enrolled in UTA's doctoral program, but in 1989, she was dismissed from the program without earning her degree. In 1990, she applied for, and was awarded, a master's degree. However, unhappy about the time and money she had expended in attempting to attain a doctoral degree, Ho filed this suit against appellees. In her fifth amended original petition, Ho sought recovery for breach of an agreement formed by the graduate catalogue, breach of an oral agreement, breach of an implied agreement, recovery under a theory of *quantum meruit* and un-

just enrichment, fraudulent representations and omissions, and violations of the Due Course of Law and the Equal Protection Clauses of the Texas Constitution.

In her first and third points, Ho challenges the October 16, 1997 order of the trial court granting appellees' plea to the jurisdiction of the court to consider her breach of contract claims. Noting that on January 14, 1997, the trial court entered a written order overruling that plea to the jurisdiction, Ho argues that order was a final judgment disposing of all parties and issues to the case. Thus, she continues, inasmuch as the October 16, 1997 order was rendered well beyond the trial court's 30–day plenary power to set aside, modify, or amend judgments, the trial court acted beyond its jurisdictional powers.

Rule 301 of the Texas Rules of Civil Procedure provides that there shall be only one final judgment rendered in any cause except where it is specially provided by law. A judgment is final when it disposes of all controverted issues concerning all parties to the suit. *Gulf, C. & S.F. Ry. Co. v. Fort Worth & N.O. Ry. Co.*, 68 Tex. 98, 2 S.W. 199, 200 (1886), *reh'g denied*, 68 Tex. 98, 3 S.W. 564 (Tex.1887). Thus, any order rendered during a lawsuit which does not dispose of all issues regarding all parties is, of necessity, interlocutory. *Campbell v. Campbell*, 550 S.W.2d 164, 166 (Tex.Civ.App.— Austin 1977, no writ). Furthermore, when the terms of a final judgment conflict with those of an interlocutory order, the terms of the final judgment control. *Dickson & Associates v. Brady*, 530 S.W.2d 886, 887–88 (Tex. Civ.App.—Houston [1st Dist.] 1975, no writ).

In this case, the trial court's January 14, 1997 order was clearly interlocutory because it failed to dispose of all of Ho's causes of action. *See Gulf, C. & S.F. Ry. Co.*, 2 S.W. at 200; *Campbell*, 550 S.W.2d at 166. Because the order was interlocutory, the trial court continued to have plenary power over all facets of the case and was thus free to vacate, modify, correct, or reform any previous order or judgment. *Bergman v. West*, 262 S.W.2d 435, 436 (Tex.Civ.App.—Waco 1953, no writ). Unlike the January 14 order, the later order did dispose of all parties and issues. It was, therefore, a final judgment

which controlled the disposition of the case and effectively set aside the prior inconsistent order. *Dickson & Associates*, 530 S.W.2d at 887–88. That being so, the trial court did not err in executing the later order. Ho's first and third points are overruled.

In her second point, Ho challenges the trial court's sustention of appellees' objections to portions of her affidavit submitted in support of her response to the summary judgment motion. She also argues that the trial court erroneously granted the summary judgment because the summary judgment evidence showed fact questions existed.

After Ho filed her response and her supporting affidavit, appellees objected to four hearsay statements contained in the affidavit, namely, statements made by a postdoctoral student to her; regarding statements made by other students to her; regarding what she had heard about Professor Shelly; and statements made by Professor Reynolds to Ho. In its October 16 order, the trial court sustained these objections.

It is the rule that rulings concerning the admission or exclusion of summary judgment evidence are reviewed under an abuse of discretion standard. *Sanders v. Shelton*, 970 S.W.2d 721, 726–27 (Tex.App.— Austin 1998, pet. filed). Furthermore, the same standards and principles of evidence that are applicable in a trial on the merits are equally applicable in a summary judgment proceeding. *United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex.1997). Thus, a hearsay statement that does not fall within one of the exceptions provided by statute or rule is inadmissible and, when contained within an affidavit, may not be considered as summary judgment evidence. *See* Tex.R.Evid. 802. The Texas Rules of Evidence define a hearsay statement as a statement other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. Tex.R.Evid. 801(d). The four statements in Ho's affidavit were clearly hearsay and the trial court did not err in sustaining appellees' objections to those portions.

Ho also argues that the summary judgment is erroneous because there were factual discrepancies within the summary judgment evidence which could not be resolved by summary judgment. In response, appellees assert that the record references made by Ho supporting her claim are to evidence attached to motions which she filed subsequent to the summary judgment which cannot be considered upon appellate review.

Rule 166a(c) provides that except on leave of the court, the non-movant may, not later than seven days prior to the day of hearing, file and serve opposing affidavits or other written responses. Tex.R.Civ. P. 166a(c). If such responses are not timely filed without an order of the court permitting the late filing, an appellate court must presume that the trial court did not consider such responses in making its judgment. *INA of Texas v. Bryant*, 686 S.W.2d 614, 615 (Tex.1985). Thus, the scope of our review must be limited to the evidence properly before the trial court at the time of the hearing on the motion. *Dunn v. Southwestern Bell Tel. Co.*, 860 S.W.2d 571, 574 (Tex. App.—El Paso 1993, writ denied). The hearing on the motion was held on August 1, 1997. Because the record does not show any trial court orders permitting the late filing of summary judgment evidence, our review is limited to the motions, responses, and evidence filed no later than July 25, 1997.

Even so, Ho maintains, although new evidence was attached to her motion for new trial filed after July 25, 1997, this court may still review that evidence in making our decision because by including it in her motion for new trial, she had preserved error for our review. *See* Tex.R.Civ. P. 324(b)(1). Although Ho makes a cursory and implicit argument that the trial court abused its discretion in denying her motion for new trial because of newly discovered evidence, she does not further develop the argument by showing exactly how the trial court erred in its ruling in view of the record before it at the time. To be entitled to a new trial on the basis of newly discovered evidence, it is incumbent upon the party seeking the new trial to satisfy the court first, that the evidence has come to the knowledge of the party since the trial; second, that it could not have been sooner discovered by the exercise of reasonable diligence; third, that it is not cumulative; and fourth, that it is so material that it would probably produce a different result if a new trial was granted. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983); *Conwill v. Gulf, C. & S.F. Ry. Co.*, 85 Tex. 96, 19 S.W. 1017, 1020 (1892). Without proper supporting argument and references, she has waived her challenge. Tex.R.App. P. 38.1(h); *Missouri–Kansas–Texas R. Co. v. McFerrin*, 156 Tex. 69, 291 S.W.2d 931, 941 (1956) (citing to former Rule 418 of the Texas Rules of Civil Procedure).

When a defendant moves for summary judgment, he has the burden to prove the essential elements of his defense or affirmative defense as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979) (citing *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972)). To make such a showing concerning a defense, the defendant must prove there are no genuine issues of material fact concerning one or more of the elements of the plaintiff's cause of action and that he is entitled to judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). To make such a showing concerning an affirmative defense, the defendant must prove there are no genuine issues of material fact concerning all the elements of his affirmative defense and that he is entitled to judgment as a matter of law. *Swilley v. Hughes*, 488 S.W.2d at 67 (citing *Gibbs*, 450 S.W.2d 827). Thus, a summary judgment cannot stand if a genuine issue of material fact exists concerning the plaintiff's claim or the defendant's defense or affirmative defense. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In determining whether a genuine issue of material fact exists in either circumstance, evidence favorable to the non-movant will be taken as true, every reasonable inference will be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* at 548–49.

In their original answer, their plea to the jurisdiction, and their motion for summary judgment, appellees asserted that Ho's contract claims, her tort claims, and her con-

stitutional claims were barred by the affirmative defense of sovereign immunity. Supporting that argument, appellees argue the because UTA is managed and funded by the state, it is a state agency entitled to sovereign immunity. Additionally, they argue, to the extent that Ho alleged claims against the remaining defendants acting in their official capacity, they also are protected by the sovereign immunity defense.

As a matter of law, it has been recognized that UTA is a state agency. *Courtney v. University of Tex. Sys.,* 806 S.W.2d 277, 281 (Tex.App.—Fort Worth 1991, writ denied). As such, it is entitled to the protection under the sovereign immunity doctrine. *Federal Sign v. Texas S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997); *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847). Likewise, those employees working for UTA in their official capacity are protected from suit. *Id.* The state and its employees must, however, affirmatively plead sovereign immunity in order to be shielded from suit. *Davis v. City of San Antonio,* 752 S.W.2d 518 (Tex.1988). Once the state does so, it is the plaintiff's burden to plead and prove that through some form of legislative authority[1] the state has consented to be sued. *Griffin v. Hawn,* 161 Tex. 422, 341 S.W.2d 151, 152 (1960).

Citing *Courtney,* 806 S.W.2d 277, and *Federal Sign,* 951 S.W.2d 401, Ho asserted in her summary judgment response that she did not have to plead and prove legislative consent to any of her claims because by its conduct, UTA had waived its sovereign immunity. That reliance requires a discussion of those cases.

In *Courtney,* the plaintiff began employment at UTA in 1980 as an untenured "Lecturer." According to an employment letter, his employment would be renewed on an annual basis so long as his performance was satisfactory. In the fall of 1986, his employment was terminated without a stated reason. Courtney filed suit asserting that although he was untenured, he could still only be terminated because of unsatisfactory performance. The trial court granted UTA

summary judgment on the basis of sovereign immunity. 806 S.W.2d at 278–79, 280.

However, en route to reversing the trial court judgment, the Fort Worth Court of Appeals noted that Courtney had actually presented two claims in his suit—a contractual claim and a property rights claim. *Id.* at 284. While the State's permission would have been necessary to pursue the contract claim, the court commented, the deprivation of property rights claim was one upon which State permission was not necessary and upon which Courtney was entitled to procedural due process. Thus, the trial court erred in rendering summary judgment as to that claim. *Id.* at 280–82, 286–87.

*Courtney* does not stand for the proposition that UTA, by its own conduct, may waive its sovereign immunity from suit. Indeed, it has long been held that only the legislature has the authority to waive sovereign immunity. *Federal Sign,* 951 S.W.2d at 409. Contrary to Ho's interpretation, *Courtney* was actually decided upon the time honored principle that the state may not deprive a citizen of a property right without due process of law, nor upon concepts associated with waiver of sovereign immunity. That being so, we do not find it persuasive.

In discussing the impact of *Federal Sign* upon her waiver contention, Ho argues that because her case is factually distinguishable, the majority opinion in that case does not control. Rather, she argues, her case fell within one of the hypothetical situations mentioned in Justice Hecht's concurring opinion about which he comments that, although the court did not deal with such hypotheticals, "they do suggest the State may waive immunity." *Federal Sign,* 951 S.W.2d at 412–13. We disagree with Ho's premise. By stating that it is "the Legislature's sole province to waive or abrogate sovereign immunity," the majority opinion in *Federal Sign* clearly reaffirmed a long line of cases standing for that general principle. *Id.* at 409.

In her summary judgment response, Ho failed to discuss or point out any exception to this premise that would be applicable to her case, nor did she cite authority recognizing

1. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 101.025 and 107.001—.005 (Vernon 1997).

any such applicable exception. By independent research, the only exception we have found in which the State, by its own actions waives immunity, is that which applies when the State initiates a suit. *See State v. Martin*, 347 S.W.2d 809, 814 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.) (holding that when the State brings suit, it voluntarily waives its immunity from any defenses, including counterclaims incident to, connected with, arising out of, or germane to the controversy involved in the State's suit). Because Ho originated this suit, that exception is clearly not applicable here. Therefore, inasmuch as Ho was unable to plead and prove she had the State's consent to bring this suit, she has not complied with that procedural requirement and the trial court correctly granted summary judgment dismissing Ho's contract claims.

■■■ Ho did not make a separate argument concerning her tort claims, but, as in the case of contract claims against the State, legislative consent is required to avoid the sovereign immunity defense. *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). By enactment of the Texas Tort Claims Act, the Legislature has seen fit to waive that defense for a limited category of such claims. *See* Tex.Civ.Prac. & Rem.Code Ann. § 101.025 (Vernon 1997); *Lowe*, 540 S.W.2d at 298. In her fifth petition, Ho asserted a fraud claim against UTA; however, fraud is not included in the categories listed in the Texas Tort Claims Act. *See* Tex.Civ.Prac. & Rem.Code Ann. § 101.021 (Vernon 1997). Therefore, the trial court properly rendered summary judgment in that regard.

In mounting her constitutional claims, Ho alleged that appellees violated the Due Course of Law and Equal Protection Clauses of the Texas Constitution by depriving her of a property right in her doctoral degree. In particular, Ho asked that she be given her doctoral degree or, in the alternative, that she be reinstated into the doctoral program with an opportunity to earn her degree by taking a written examination on the fundamentals of chemistry, as well as seeking actual and exemplary damages.

■■■ Initially, appellees argued that Ho cannot recover monetary damages for alleged violations of the Texas Constitution. We agree. The Texas Bill of Rights is self executing for the limited circumstance of enjoining state employees from violating these rights and, because a procedural device does not exist to provide a remedy otherwise, private rights of action do not exist for these guarantees. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex.1995); *Vincent v. West Tex. State Univ.*, 895 S.W.2d 469, 475 (Tex.App.—Amarillo 1995, no writ) (holding that while *Bouillion*concerned only free speech and association rights, the analysis used in *Bouillion* equally applies to other constitutional guarantees, such as equal protection). That being so, Ho may only seek injunctive relief against appellees Rajeshwar, Blau, Perkins, and Timmons. We will hereafter refer to these appellees as the individual defendants.

In considering Ho's claim against the individual defendants for due course of law violations, her allegations were written broadly enough to incorporate a challenge under the substantive as well as the procedural components of the Due Course of Law Clause. Likewise, although somewhat inartfully done, the individual defendants sufficiently raised grounds in their summary judgment motion to argue they were entitled to judgment as a matter of law against both these allegations.

■■■ Inasmuch as the Texas Due Course of Law Clause has been held to provide the same protections as the Due Process Clause of the United States Constitution, Texas courts, in construing the Texas clause, have routinely looked to federal case law. *University of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex.1995) (citing *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 252–53 (1887)). There are two components of the protections afforded by the clause—substantive and procedural. The substantive component of the Due Course of Law Clause protects citizens from state action arbitrarily or capriciously depriving them of an interest in life, liberty, or property. *See Eiland v. Wolf*, 764 S.W.2d 827, 834 (Tex.App.—Houston [1st Dist.] 1989, writ denied). The procedural component provides that citizens are entitled to notice and an

opportunity to be heard at a meaningful time in a meaningful manner before any rights in life, liberty, or property may be taken away by the state. *Than,* 901 S.W.2d at 930.

■ For example, in cases in which a student is dismissed for academic reasons, in order to establish the school violated the substantive component of the Due Course of Law Clause, he must prove that the dismissal was the result of "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Eiland,* 764 S.W.2d at 835 (citing *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985)). Thus, if there is any evidence that professional judgment was exercised in his dismissal, the school is entitled to judgment against the student as a matter of law. *Id.*

■ In this case, assuming arguendo that Ho had a property interest in her attempt to earn a doctoral degree, after reviewing the summary judgment record, we find that there is some evidence that professional judgment was used by the individual defendants in determining that Ho was not entitled to earn the doctoral degree. Therefore, the individual defendants were entitled to judgment against Ho's substantive due course of law action.

■ In considering the procedural component of Ho's action, cases involving dismissals for academic reasons are reviewed under a less stringent standard than those cases involving students dismissed for disciplinary reasons. *Board of Curators, Univ. of Mo. v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Eiland,* 764 S.W.2d at 833. Specifically, it has been stated that in order to give due deference to the exercise of professional judgment and because the educational process is not generally adversarial, students dismissed from school for academic reasons are not entitled to a hearing. *Horowitz,* 435 U.S. at 90, 98 S.Ct. at 955, 55 L.Ed.2d at 135; *Eiland,* 764 S.W.2d at 834.

■ Again, assuming arguendo that Ho had a property interest to assert, she had notice from UTA's course catalogue as well as the standard practice utilized in doctoral programs that she was required to pass the oral dissertation defense in order to earn her degree. She was also given a written notice that she passed her first oral defense upon the condition that she pass another oral exam covering the fundamentals of chemistry. It was only after she failed this second oral examination that UTA decided to dismiss her from the doctoral program. She was not entitled to a hearing before UTA made this decision. *Horowitz,* 435 U.S. at 90, 98 S.Ct. at 955, 55 L.Ed.2d at 135; *Eiland,* 764 S.W.2d at 834. Ho was accorded the procedural due course of law to which she was entitled.

In describing her remaining constitutional claim, Ho specifically alleged that "her oral dissertation defense exam, her oral exam of the Fundamentals of Chemistry, and her subsequent discharge from the doctoral program deprived her of her interest in property in violation of the Equal Protection Clause of the Texas Constitution." In addition, she alleged that she was denied her degree, in part, because of the individual defendants' alleged gender bias.

However, in their summary judgment motion, the individual defendants pointed out that in her deposition testimony, Ho only accused Rajeshwar of gender bias discrimination without any evidence to support that allegation. Thus, they assert, they are entitled to judgment as a matter of law. Furthermore, they suggest, even if there was some evidence of gender bias, the individual defendants suggested that Ho's equal protection challenge to her dismissal should be reviewed under a "narrow standard of review." Under such a review, they continue, her dismissal should not be reversed unless the decision to do so "went 'beyond the pale of reasoned academic decision making.'" Therefore, under either argument, they conclude that they were entitled to summary judgment.

Article 1, Section 3 of the Texas Constitution provides that all free men, when they form a social compact, have equal rights. This particular provision of the state bill of rights provides for the equal protection of

the laws, Tex. Const. art. 1, § 3 *Interpretative Commentary,* and provides the same guarantees as the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution. *See Rose v. Doctors Hosp.,* 801 S.W.2d 841, 846 (Tex.1990) (holding that Texas cases echo federal standards when determining whether a statute violates equal protection under either the Texas or United States Constitution).

 The principle of equal protection guarantees that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3253–54, 87 L.Ed.2d 313, 320 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). Moreover, any classifications created by state action must be made reasonably, not arbitrarily or with discriminatory effect. Tex. Const. art. 1, § 3 *Interpretative Commentary; Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450, 464–65 (1977). Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Id.* at 264–65, 97 S.Ct. at 562–63, 50 L.Ed.2d at 464 (citing *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). Yet, while equal laws are guaranteed, equal results are not. *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870, 884 (1979) (citing *Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597; and *Arlington Heights,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450). Furthermore, the equal protection guarantee circumscribes all state action denying equal protection of the laws, not just legislative actions. *Avery v. Midland County,* 390 U.S. 474, 479–80, 88 S.Ct. 1114, 1117–18, 20 L.Ed.2d 45, 50 (1968) (citing *Cooper v. Aaron,* 358 U.S. 1, 17, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958)).

Here, Ho made two distinct claims of equal protection violations—gender based discrimination and deprivation of a property right. Supporting her claim of gender discrimination, she alleged that the individual defendants, acting in their official capacity, treated her differently from other doctoral students simply because she was female and in doing so intentionally acted in a discriminatory fashion in order to deny her a degree.

 In considering this claim, we note the rule that state action is presumed to be constitutional and will be upheld if a classification drawn by state action is rationally related to a legitimate state interest. *See Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254–55, 87 L.Ed.2d at 320. However, if a classification is drawn around a suspect class or affects a fundamental right, a reason to suspect discriminatory intent arises. *Feeney,* 442 U.S. at 272, 99 S.Ct. at 2292–93, 60 L.Ed.2d at 883. In those cases, the burden then shifts to the state to justify its action beyond the typical showing that a rational relationship exists between the classification and the governmental interest. *Richards v. League of United Latin Am. Citizens,* 868 S.W.2d 306, 310–11 (Tex.1993). In gender classification cases, the state is required to prove that its classification bears a close and substantial relationship to important governmental objectives. *Feeney,* 442 U.S. at 273, 99 S.Ct. at 2293, 60 L.Ed.2d at 883–84.

 In their summary judgment motion, and in response to Ho's gender-based claim, the individual defendants presented two specific arguments. First, they pointed out Ho's deposition in which she clarified that none of the individual defendants except Rajeshwar had discriminated against women. This was sufficient to entitle Blau, Timmons, and Perkins to summary judgment dismissing Ho's gender discrimination claim against them.

 Second, Rajeshwar argued that because of Ho's inadequate performance at her dissertation defense, he had a reasonable basis for recommending that she be dismissed from the doctoral program. However, he did not address the gender classification issue. The standard of proof and review depend upon whether or not a classification exists, either facially or as applied, and if so, what type it is. As the summary judgment movant, it was Rajeshwar's burden to establish as a matter of law that no classification existed, or that the classification was not based upon gender and that it was rationally related to a legitimate state interest or, if the

classification was gender based, it bore a close and substantial relationship to important governmental objectives. Without summary judgment evidence regarding the classification issue, Rajeshwar failed to establish that he was entitled to judgment as a matter of law against this claim of Ho. Thus, the trial court erred in rendering summary judgment for Rajeshwar in that regard.

■ In her second equal protection claim against the individual defendants, Ho asserted they "deprived her of her interest in property." Again, this particular claim was not addressed in their summary judgment motion. Although we note the holding in *Richards,* 868 S.W.2d at 315, that under the Equal Protection Clause there is no fundamental right to higher education, it is the rule that one may not be granted judgment as a matter of law against a cause of action not addressed in the motion for summary judgment. *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983). That being true, the trial court erred in granting summary judgment in favor of the individual defendants in this regard.

Finally, the individual defendants argue Ho's remaining equal protection claims we have discussed above were barred by the two-year statute of limitations. In support of that proposition, they pointed out that although Ho failed her dissertation in October of 1989, she did not bring her lawsuit until October 13, 1992.

■ Even though Ho's claims take on a constitutional posture, they are still subject to being time-barred. *See Calverley v. Gunstream,* 497 S.W.2d 110, 114–15 (Tex.Civ. App.—Dallas 1973, writ ref'd n.r.e.) (citing *Chase Securities Corporation v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945)). This is true because statutes of limitation bar the remedy and not the right, and therefore, constitutional rights may be subjected to those time limitations imposed by statute. *Id.* Additionally, constitutional claims may become stale as do other claims, and bring with them the associated problems with overdue lawsuits, such as faded memo-

ries, departed witnesses, and misplaced evidence. *Id.* at 114.

■ In considering the limitation claim, we note that none of the statutes of limitation expressly identify which time period is to be applied to constitutional claims. *See* Tex. Prac. & Rem.Code Ann. §§ 16.001–.037 (Vernon 1986 & Supp.1998); Tex. Civ. Prac. & Rem.Code §§ 16.051–.072 (Vernon 1997 & Supp.1998). Nevertheless, that discovery does not end our inquiry. A court must look to the substance of the plaintiff's pleadings to characterize the nature of his grievance, not its nomenclature. *Galveston, H. & S.A. Ry. Co. v. Roemer,* 1 Tex.Civ.App. 191, 20 S.W. 843, 844 (1892). This characterization is formed by determining the makeup of the remedy sought and by assessing which action, with due regard to the defendant's rights, that would most amply redress the plaintiff. *Id.* If, after characterizing the plaintiff's action, there is no corresponding action expressly listed within the statutes, then the residual four-year statute of limitations applies. *See* Tex.Civ.Prac. & Rem. Code Ann. §§ 16.002—.003 (Vernon 1986 & Supp.1998).

■ Although not raised by the parties and although Ho did not seek such relief in this proceeding, we note the line of federal cases holding that section 1983 causes of action[2] brought in Texas are subject to a two-year statute of limitations defense. *See Price v. Digital Equip. Corp.,* 846 F.2d 1026, 1028 (5th Cir.1988); *Helton v. Clements,* 832 F.2d 332, 334 (5th Cir.1987). However, section 1983 actions are not analogous to causes alleging violations of Texas Constitutional rights and cannot be relied upon as authority for imposing a two-year limitations period upon those actions. In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), Justice Stevens observed that section 1983 provides a uniquely federal remedy, *Id.* at 271–72, 105 S.Ct. at 1944–45, 85 L.Ed.2d at 264, and held that characterizing this claim for the purpose of determining which limitations period applied is a federal question. *Id.* at 268–69, 105 S.Ct. 1942–43, 85 L.Ed.2d at 262. Justice Stevens then went on to hold

---

**2.** 42 U.S.C.S. § 1983 (Supp.1998).

that every section 1983 claim, regardless of the particularities of the claim, is to be characterized as a personal injury claim. *Id.* at 278, 105 S.Ct. at 1948, 85 L.Ed.2d at 267–68.

In Texas, of course, we do not have a statutory remedy coinciding with a section 1983 remedy. Moreover, the Texas Bill of Rights, with the exception of Section 17 of Article I, are self-executing to the extent that a party may only seek injunctive relief for violations of those rights. *See City of Beaumont v. Bouillion,* 896 S.W.2d 143, 148–49 (Tex.1995). With those distinctions, we cannot rely on the federal cases to support a finding that an equal protection claim under the Texas Constitution is analogous to a personal injury claim, and therefore, subject to the two-year statute of limitations.

■■■ Considering all the above matters, we conclude the four-year statute is applicable. Ho's constitutional claims are not analogous to any of those listed in the one and two-year limitation statutes. Her claims are further distinguished in that she was limited to injunctive relief. *See McCord v. Nabours,* 101 Tex. 494, 109 S.W. 913, 917–18 (1908), *modified* 101 Tex. 494, 111 S.W. 144 (holding that a cause of action seeking to recover actual stock is equitable in nature and because no other limitations period expressly applied, the residual four-year limitations period applied). Therefore, because none of the other limitation statutes expressly provide for a shorter limitation period, we conclude the residual statute applies and Ho's claims were not time barred.

In summary, the trial court properly granted summary judgment against each of Ho's constitutional claims except for her equal protection claim against Rajeshwar for gender-based discrimination, and her claim against the individual defendants for deprivation of a property right.

Ho also made four other categories of claims against the individual defendants—breach of contract, quantum meruit, unjust enrichment, and fraud. We will first address her breach of contract claims. Ho alleged that she had reached an oral agreement with Rajeshwar, Blau, and Timmons concerning her doctoral degree quest. She claimed that they had agreed that Blau would act as her

new supervising professor rather than Rajeshwar, that Rajeshwar would not be a member of her dissertation committee, that she could include the research conducted under Rajeshwar within her dissertation without having to defend it, and that she would be able to graduate after conducting research under Blau's supervision for one year. She argues that those promises were given in exchange for her payment of tuition and her promise to continue to attend UTA. As a result of the alleged breach of that agreement by the individual defendants, Ho asserted she suffered unspecified damages.

In their summary judgment motion, the individual defendants maintained that because they were acting within their official capacities when these alleged promises were made, they were protected by the defense of sovereign immunity. We agree.

■■■ When state actors are sued while acting in an official capacity, because they are agents of the state, they are protected by the defense of sovereign immunity. *Federal Sign,* 951 S.W.2d at 405; *Hosner,* 1 Tex. at 769. Although Ho did not specifically allege she was suing the individual defendants in their official capacity, by the nature of her breach claims and the surrounding circumstances, we find she did sue them in their official capacity. This is true because the only way the individual defendants could have fulfilled those alleged obligations would be by acting in their official capacity. Thus, summary judgment was proper on the basis of sovereign immunity on Ho's breach claims.

■■■ In response to Ho's remaining claims, the individual defendants also asserted the defense of official immunity. Official immunity protects a state employee from individual liability when he establishes that he was acting within the scope of his authority and carrying out discretionary duties in good faith. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). First, a state employee acts within the scope of his employment as long as he is performing the responsibilities generally assigned to him. *Id.* at 658. Second, a discretionary duty involves activities requiring personal deliberation, decision, and judgment as contrasted

to a ministerial duty which pertains to actions requiring obedience to orders about which an employee has no choice. *Id.* at 653–54. Third, whether a state employee acted in good faith is reviewed by an objective standard. *Id.* at 656. To establish the good faith element, a state employee must show that a reasonable person in the same position would have believed that his conduct was lawful according to clearly established law and according to the information possessed at the time of the conduct. *Id.* In a summary judgment setting, a *prima facie* showing of objective good faith may be established from affidavits of co-defendants or supervisors. *City of Houston v. Newsom,* 858 S.W.2d 14, 18 (Tex.App.—Houston [14th Dist.] 1993, no writ). On the other hand, because of the policy behind official immunity, a non-movant, in order to defeat the *prima facie* showing of good faith, must show that no reasonable person in the movant's position could have thought the facts, viewed in the light most favorable to the non-movant, were such that they justified the movant's acts. *Chambers,* 883 S.W.2d at 657; *Dalrymple v. University of Texas System,* 949 S.W.2d 395, 402 (Tex.App.—Austin 1997, pet. granted). Thus, in determining whether a fact issue exists concerning good faith, we must take the non-movant's summary judgment evidence and any inferences in his favor as true. *Id.* at 402.

We will initially review the allegations made by Ho supporting her remaining claims against the individual defendants. Then, having done so, we will determine whether the individual defendants are entitled to judgment on each of those claims based upon official immunity.

Supporting her quantum meruit claim, Ho alleged that Rajeshwar and Blau personally received the benefits of her research without compensating her and by not doing so, breached an implied agreement to pay for those benefits. She maintained that Rajeshwar and Blau unfairly benefitted by receiving recognition from published research papers based upon her research, by receiving grant money for their research projects because of that research, and by her assistance in connection with other students' research. Addi-

tionally, she claimed, Rajeshwar was promoted to a tenured faculty position as a result of her research work. Consequently, she concluded, she was entitled to compensation for her services rendered to those two defendants.

In her unjust enrichment claim, Ho complained that the individual defendants obtained benefits from her as a result of their fraud, duress, and/or taking undue advantage of her. She contended that if the individual defendants really believed she was an unfit doctoral candidate, by approving her continuation in the program without allowing her to graduate, they unfairly benefitted from her research work. Furthermore, she continued, except for their multiple representations to her that she was approved to continue in the doctoral program, she would not have continued the program and not have continued to pay tuition or provide research for the individual defendants. Thus, she concluded, inasmuch as they induced her to continue her research work under the guise that she was progressing towards a degree, they unjustly benefitted from that work without compensating her.

Supporting her fraud claims, Ho accused the individual defendants of making 11 fraudulent representations and 21 fraudulent omissions resulting in lost income that she would have earned had she not attempted to earn her doctoral degree, that she suffered a lost opportunity to obtain a doctoral degree with its correlative increase in earning capacity, she paid tuition without the corresponding benefit of earning a degree, she suffered mental anguish, she paid for a computer and incurred attorney's fees.

Responding to Ho's claims, and in support of their official immunity defense, the individual defendants in their summary judgment motion asserted that they were acting within the scope of their employment with regard to all activities relevant to Ho's quantum meruit, unjust enrichment, and fraud claims because they were employed by UTA and were performing their official duties of teaching, evaluating, and researching. They supported these assertions by the affidavits of each of the individual defendants.

Ho only challenges these assertions in regard to her quantum meruit claim. In that regard, she asserts that Blau and Rajeshwar had her conducting research solely for their personal gain. She says this claim is supported by the fact that the published papers resulting from her research included their names but not that of UTA. Additionally, within her affidavit, Ho claimed that in May 1989, Blau instructed her to conduct a six-week research project after UTA, unknown to her, had switched her supervising professor back to Rajeshwar. According to her, she did not get any benefit from this research because it concerned an area unrelated to her dissertation topic. Instead, she continued, the research only benefitted Blau because he needed to publish his research in order to gain tenure with UTA and, inasmuch as he was no longer her supervising professor, he was not acting within the scope of his employment in instructing her to continue the research. Thus, she posited, both Rajeshwar and Blau acted outside the scope of their employment because they had her conduct research for their own personal gain.

By affidavit, the individual defendants averred that it is a common practice for supervising professors to have their students conduct research in their field of expertise, and the work performed by Ho was of this nature and was done as part of her dissertation work. Additionally, included with Ho's summary judgment response is an affidavit by Robert Johnson, a UTA associate dean, in which he avers that most professors who fail to obtain tenure do so because they were not "published enough." A reasonable inference from this statement is that as part of their professional responsibilities, professors are required to publish their research. There is no summary judgment evidence countering the averments that it is within a supervising professor's general job duties to have a student doctoral candidate conduct research in an area of his expertise and to publish the results of the research. Furthermore, Ho's unsupported and conclusory assertion that Rajeshwar and Blau acted without the scope of their employment by failing to include UTA's name within their published papers in itself is not sufficient to raise a fact question. In summary, we find that the individual defendants sufficiently established that they were acting within the scope of their employment authority.

With regard to the portion of the official immunity doctrine requiring that the actors perform discretionary duties, the individual defendants asserted their duties of teaching, supervising, and evaluating students involved the exercise of personal deliberative decisions. Responding, and relying upon *Armendarez v. Tarrant County Hospital Dist.*, 781 S.W.2d 301 (Tex.App.—Fort Worth 1989, writ denied), Ho contends that the individual defendants were not entitled to official immunity because their duties were not uniquely governmental in nature. The *Armendarez*court referred to a United States Supreme Court holding that the purpose of official immunity is so "that governmental officials might be free to exercise their duties without fear of damage suits—suits which would consume their time and energy and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." *Id.* at 305 (citing *Barr v. Matteo*, 360 U.S. 564, 571–73, 79 S.Ct. 1335, 1339–41, 3 L.Ed.2d 1434 (1959)). The Court then concluded that the medical doctors employed by the hospital district were not entitled to the benefit of the immunity because the duties they performed were not uniquely governmental in nature, and "because the threat of a lawsuit would not deter a doctor in the fearless and vigorous exercise of medical discretion any more than it would a doctor in private practice." *Id.* at 306. However, in *Kassen v. Hatley*, 887 S.W.2d 4 (Tex.1994), in considering a similar question relating to health care professionals, the court commented, "[w]e find unsatisfactory *Armendarez's* distinction between activities that are *uniquely* governmental and those that are not. There are few activities that are uniquely governmental." *Id.* at 10. It went on to conclude that a state employed doctor or nurse "has official immunity from claims arising out of the exercise of governmental discretion, but is not immune from liability arising from the exercise of medical discretion. Courts should look to the character of the discretion exercised in each instance." *Id.* at 11.

Following the direction of the *Kassen* court, after reviewing the evidence in connection with Ho's quantum meruit, unjust enrichment, and fraud claims, we conclude that the duties performed in the assessment of a doctoral candidate's qualifications and the direction of the work to be performed by the candidate incident to that assessment in this instance was within the permissible discretionary range allowed the individual defendants by UTA, their governmental employer.

■ With regard to the final element of official immunity, Rajeshwar, Blau, and Timmons assert that they acted in good faith with regard to Ho's quantum meruit, unjust enrichment, and fraud claims. In this regard, and with regard to her quantum meruit claim, Ho alleged that Rajeshwar and Blau personally received benefits from her research work without giving her proper compensation. Supporting that claim, she alleged that Rajeshwar and Blau felt all along that Ho was not a qualified doctoral candidate, yet they still had her doing research as though she were working towards a doctoral degree.

However, Ho did not produce objective evidence supporting this conclusory averment of bad faith in having her do the research she performed. It is undisputed that the research was in the field in which she was seeking a doctoral degree. The affidavit averments of Blau, Timmons, and Perkins, that it is common practice for a student to conduct research in the supervising professor's field of expertise, were not controverted. The summary judgment evidence was sufficient to show the good faith of the individual defendants.

■ Ho's next claim of unjust enrichment was that the individual defendants unfairly benefitted from her research because they never believed she was a proper candidate for a doctoral degree, yet they continued to approve her advancement so that she would continue conducting research for them. In his affidavit, Perkins stated that to earn a doctoral degree, a student must pass a series of tests, the last of which was an oral dissertation defense. He continued that if a student failed any one of the tests, including the final one, then he has failed to earn a degree.

Rajeshwar, within his affidavit, further added that Ho did perform well on the initial set of exams because they were designed to test a student's technical knowledge which is an attribute Ho undoubtedly had. However, he continued, the dissertation defense is designed to test a student's ability to grasp amorphous concepts and to resolve open-ended problems. With regard to Ho, she had failed to demonstrate that she possessed the minimum ability required to earn a doctoral degree. There is an absence of summary judgment evidence showing that no reasonable professor would have considered the individual defendants' actions justifiable. Thus, summary judgment on the basis of official immunity was properly granted against Ho's unjust enrichment claim.

Ho's final category of claims concerned allegations of 11 fraudulent representations and 21 fraudulent omissions committed by the individual defendants. After reviewing the summary judgment evidence, we find the individual defendants made a *prima facie* showing that they acted in good faith in the circumstances involving seven misrepresentations and 15 fraudulent omissions. As with her quantum meruit and unjust enrichment claims, Ho did not present objective evidence to the trial court establishing that no reasonable person in the individual defendants' position acting under similar circumstances would have thought their actions were justified. Thus, summary judgment was properly granted for those seven fraudulent misrepresentation and 15 fraudulent omission claims.

■ The individual defendants did fail, however, to establish a *prima facie* showing of good faith for these remaining claims:

1) Rajeshwar represented to Ho that she had already conducted research within his class that would count towards her doctoral degree;

2) Rajeshwar represented to Ho that she would spend more time and money attempting to earn her doctoral degree by leaving school after attaining her masters' degree and returning later for her doctoral degree than by staying in school until she had completed her doctoral degree because she would have to begin from scratch on

new research projects if she left school and later returned;

3) Rajeshwar represented to Ho that because of her previous work, she only needed to complete two additional research papers and two years within the graduate program to earn a doctoral degree;

4) Rajeshwar represented to Ho that he would be her supervising professor;

5) The individual defendants failed to advise Ho that her supervising professor was changed from Blau to Blau and Rajeshwar;

6) The individual defendants failed to advise Ho that they could disregard the representations contained in the graduate school catalog and require whatever they wished of her as a condition of her obtaining a doctoral degree;

7) The individual defendants failed to advise Ho that the representations made in the graduate school catalog were not to be relied upon by her;

8) The individual defendants failed to advise Ho that she would be required to perform research for other students to the detriment of her educational goals if her professor so ordered;

9) The individual defendants failed to advise Ho that she might be banned from UTA's facilities without warning in spite of her having paid tuition and fees for the use of those facilities; and

10) The individual defendants failed to advise Ho that Rajeshwar planned to immediately resign as her supervising professor as soon as he attained a tenured position with UTA.

With regard to these claims, the individual defendants failed to make the requisite summary judgment showing because, other than their denials, they did not present supporting objective evidence that a professor in a similar position would have thought the manner in which they conducted themselves would have been lawful under all the surrounding circumstances. The mere conclusory assertions contained within their affidavits that they acted in good faith without reference to specific allegations and without reference to

supporting evidence is not sufficient to meet their summary judgment burden in that regard. *Texas Division–Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex.1994).

■■■■ Ho's final group of claims surviving the individual defendants' official immunity defense concerned four allegations of misrepresentation and six omissions of material fact that caused her to continue within the doctoral program and suffer damages. To prove actionable fraud, a plaintiff must show:

1) that a material misrepresentation was made; 2) that it was false; 3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; 4) that he made it with the intention that it should be acted upon by the party; 5) that the party acted in reliance upon it; and 6) that he thereby suffered injury.

*Oilwell Div., U.S. Steel Corp. v. Fryer*, 493 S.W.2d 487, 491 (Tex.1973). In addition, silence may equate to a positive misrepresentation of material facts when there is a duty to speak. *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979). A duty to speak may arise when a fiduciary relationship exists between parties, *Stone v. Lawyers Title Ins. Corp.*, 537 S.W.2d 55, 67 (Tex.Civ.App.—Corpus Christi 1976), *aff'd in part and rev'd in part*, 554 S.W.2d 183 (Tex.1977), or when a party makes a material representation relied upon by the other party that he later finds out to be untrue and fails to reveal this change in events. *Susanoil, Inc. v. Continental Oil Co.*, 519 S.W.2d 230, 236 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.).

■■■ As we listed them above, in her first four remaining fraud claims, Ho alleged that Rajeshwar made promises to her regarding her doctoral program that he never intended to keep. In his motion for summary judgment, Rajeshwar countered by asserting that there was no evidence supporting the allegation that he made these promises with the specific intent not to award Ho her degree.[3]

■■■ Whether a party possessed a fraudulent intent is to be determined by a trier of

---

**3.** Texas Rule of Civil Procedure 166a(i) did not apply to this case because all motions and responses were filed and the hearing was held prior to September 1, 1997.

fact. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). Thus, because he was a summary judgment movant, Rajeshwar had to do more than merely argue within his motion that there was no evidence supporting Ho's allegation that he acted fraudulently. Rather, he had the burden to present positive summary judgment evidence which would be sufficient to establish as a matter of law that he had no fraudulent intent. *See In re Estate of Thompson*, 873 S.W.2d 113, 114 (Tex.App.—Tyler 1994, no writ). In an attempt to meet this burden, Rajeshwar maintained that the summary judgment evidence conclusively showed that Ho did not receive her degree because of her performance during her dissertation defense, not because of any bad faith on his part. This, he suggested, sufficiently showed that at the time in question, he did not act fraudulently.

While conduct occurring after the alleged misrepresentations may sometimes be relevant to show the intent of a party, *see Spoljaric*, 708 S.W.2d at 434, that is not true here. Ho alleged that Rajeshwar made these four representations prior to her entering the graduate program, yet the decision to fail her occurred several years later. Evidence pertaining to Rajeshwar's decision to fail her because of her performance during the interim period is simply too far removed to be relevant as to his mind set at the time she entered the program. Thus, Rajeshwar did not meet his summary judgment burden to establish as a matter of law that he acted without fraud in these matters. Summary judgment was not proper against these four claims.

In her remaining six fraud claims which we have listed above, Ho alleged that the individual defendants failed to disclose material facts, which had she known, would have caused her to take a different course of action and save herself time and money. In response, the individual defendants argue there was no fiduciary relationship, that they had no duty to disclose and, without that duty, any silence on their part did not amount to a misrepresentation. In addition, they assert, the facts which Ho alleged were matters of common knowledge known to all

parties at the time Ho made her decision and, thus, there was nothing that needed to be disclosed. Therefore, they conclude, Ho's fraudulent omission claims fail as a matter of law.

 A duty to speak may arise from a fiduciary relationship. *Stone*, 537 S.W.2d at 67. Formal fiduciary relationships typically arise from legal relationships such as attorney-client, guardian-ward, and trustee-*cestui que* trust. *See Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980). Informal fiduciary relationships may arise in circumstances "where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Id.* In either case, the one in whom confidence is placed consents, as a matter of law, to have his conduct towards the other measured by the standards of the finer loyalties established by equitable principles. *Id* at 508.

 Whether a formal fiduciary relationship exists is a question of law when the underlying facts are undisputed. *Fuqua v. Taylor*, 683 S.W.2d 735, 737 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Conversely, whether informal relationships exist are typically determined by triers of fact because those relationships are formed by the surrounding circumstances. *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334, 338–39 (1944). As we have pointed out, an informal relationship may give rise to a fiduciary duty where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one. Even so, the supreme court has cautioned, although fiduciary relationships are based upon trust, not all relationships involving a high level of trust and confidence require that the parties act with good faith and with due regard to the interests of the one reposing confidence. *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 178–77 (Tex.1997). However, when influence has been acquired and abused, or when one personally gains from the trust and confidence reposed by another, a fiduciary relationship is likely to exist. *Moore*, 595 S.W.2d at 507–08.

Initially, we do not find as a matter of law that formal fiduciary relationships exist between teachers and students in a normal educational setting. Secondly, in deciding whether there was an informal fiduciary relationship, in view of Ho's allegations and in a summary judgment context, it was the burden of the individual defendants, as summary judgment movants, to present affirmative evidence that no such relationship existed. *In re Estate of Thompson,* 873 S.W.2d at 114. In each of their affidavits, the individual defendants averred that they had a normal student-teacher relationship with Ho. They asserted they did their usual job duties of teaching, supervising, advising, and evaluating her. As we have noted, they also averred that the duties required of Ho were those usually and normally required of doctoral students. The summary judgment evidence was sufficient to show that Ho's relationship with the individual defendants was not, by its nature, confidential. That being true, the evidence was sufficient to show the nonexistence of the two required elements necessary to establish an informal fiduciary relationship. Thus, the individual defendants established they had no affirmative duty to speak arising from such a relationship.

The individual defendants also denied they had an agreement with Ho and that they did not conceal any information from her. First, the individual defendants did not cite to, nor have we found, any authority that stands for the proposition that one can only commit fraudulent concealment in instances in which an agreement has been formed. Rather, to recover on the theory of fraudulent concealment, a plaintiff needs only show that he relied upon information to which he was entitled to rely, but which was fraudulently furnished to him. An express agreement is not required. Thus, whether or not a specific agreement was reached with Ho is not relevant to the issue of concealment in this case.

Second, although they alleged generally in their summary judgment motion that they did not conceal any information, they did not provide specific facts supporting that argument. Whether or not they wrongfully concealed pertinent information depends upon the factual circumstances. Without evidence conclusively establishing they did not conceal pertinent information, they were not entitled to summary judgment upon the question. *See In re Estate of Thompson,* 873 S.W.2d at 114. For those reasons, the individual defendants were not entitled to summary judgment disposing of Ho's fraud claims which we have above numbered five through ten.

In summary, the trial court properly rendered judgment as a matter of law against all of Ho's claims except for the four misrepresentation claims against Rajeshwar and her six fraudulent omission claims against the individual defendants which we have listed above.

In her fourth point of error, Ho argues the trial court erred by postponing the original trial date of August 11, 1997, without any motion to do so. Assuming, without deciding, that the question was properly preserved for our review, we disagree.

This case was originally set for a non-jury trial. Then, on May 9, 1997, the trial court granted a motion for continuance and ordered the case set for a jury trial on August 11, 1997. Just prior to the trial date, on August 1, 1997, the trial court held a summary judgment hearing. From the docket sheet, it appears that on the date of that hearing, the trial court postponed the August 11th trial date in order to consider the plea to the jurisdiction and the summary judgment motion.

Ho argues that Texas Rule of Civil Procedure 247 restricted the trial court's power to postpone the August 11 trial setting. In relevant part, Rule 247 provides that no case which has been set upon the trial docket of the court shall be taken from the trial docket for the date set except by agreement of the parties or for good cause upon motion and notice to the opposing party.

However, Rule 245 provides that once a cause has been set for trial with at least 45 days notice to the parties, the trial court may reset the case to a later date on any reasonable notice to the parties. Tex. R.Civ. P. 245. Along with other inherent powers and duties, a trial court is given wide

discretion in managing its docket. *See Clanton v. Clark,* 639 S.W.2d 929, 931 (Tex. 1982) (holding that trial court did not abuse its discretion by dismissing a case for counsel's failure to comply with the schedule of the court). Rule 245 expressly gives the trial court the necessary wide discretionary powers to manage its docket, whereas Rule 247 only applies to circumstances in which a party wants to entirely withdraw a case from the trial docket.[4] *See* 3 McDonald Texas Civil Practice § 17:27, n. 441 (1992). Because the trial court had a pending plea to the jurisdiction as well as a pending motion for summary judgment which had the potential of disposing of the case without a jury trial, it did not abuse its broad discretionary power to control its docket in postponing the trial without a formal motion for continuance being filed. *Clanton,* 639 S.W.2d at 931. Ho's fourth point of error is overruled.

In her final point of error, Ho contends the trial court erred by assessing costs against her. She urges this is so because appellees filed their motion for summary judgment and affidavits in bad faith and solely for the purpose of delay. Unless there is a showing of good cause within the record, the trial court must award to the successful party any amount of recoverable costs incurred as a result of the litigation. *See* Tex.R.Civ. P. 131 and 141; *Sorrells v. Irion,* 216 S.W.2d 1021, 1022 (Tex.Civ.App.—Amarillo 1948, writ dism'd); *Siepert v. Brewer,* 433 S.W.2d 773, 775 (Tex.Civ.App.—Texarkana 1968, writ ref'd n.r.e.) (holding that Rule 131 of the Rules of Civil Procedure "contemplates that a 'successful party' to a suit is one who obtains a judgment of a competent court vindicating a claim of right, civil in nature"). A party challenging the award of costs to the successful party has the burden to show that the trial court abused its discretion by awarding costs to the appellees as mandated by Rule 131 of the Rules of Civil Procedure. *Harris v. Shotwell,* 490 S.W.2d 860, 861 (Tex. Civ.App.—Fort Worth 1973, no writ).

UTA successfully defended against all of Ho's claims both at the trial level and this level. That being so, Ho's mere assertions that UTA used delay tactics and filed affidavits in bad faith are not sufficient to show the trial court erred in awarding costs to UTA. Ho's challenge to that action is overruled.

However, with relation to the trial court costs relating to the claims against the individual defendants that were reversed and remanded by this court, it may be necessary for the trial court to reassess its costs depending upon the trial court resolution of those claims. Thus, Ho's challenge to the assessment of those trial court costs in the judgment under appeal is reversed in order that they may be assessed after the trial court's disposition of those matters.

Accordingly, the portion of Ho's suit seeking recovery against the individual defendants for the claims we have listed above is severed, the portion of the summary judgment rendering judgment in their favor with regard to those claims is reversed and that portion of the suit is remanded to the trial court. The remainder of the judgment of the trial court is affirmed.

QUINN, J., dissents.

QUINN, Justice, dissenting.

I respectfully dissent insofar as the majority finds a four-year statute of limitations applicable to Ho's causes of action emanating from the equal protection clause of the Texas Constitution. I agree that the applicable limitations period must be determined by looking "to the substance of the plaintiff's pleadings to characterize the nature of his grievance." However, I differ with the conclusion that the limitations period applicable to the equal protection claims alleged here differs from that applicable to equal protection claims asserted via United States Code title 42, section 1983.

---

4. Rule 245 provides, in relevant part, that when a case previously has been set for trial, the court may *reset* said contested case to a later date on any reasonable notice to the parties. Tex.R.Civ. P. 245 (emphasis added). Rule 247, on the other hand, provides, in relevant part, that no cause which has been set upon the trial docket of the court shall be *taken* from the trial docket for the date set except by agreement of the parties or for good cause upon motion and notice to the opposing party. Tex.R.Civ. P. 247 (emphasis added).

Ho claims that her right to equal protection of law under article 1, section 3 of the Texas Constitution was violated because she suffered gender discrimination and a deprivation of property rights. In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Court held that suits stemming from section 1983 are "personal injury" actions for purposes of determining limitations. The majority finds the reasoning of *Wilson* inapplicable because *Wilson* involved a statutory remedy whereas the present case does not. Since the only relief available for Ho's equal protection claim is injunctive, it concludes that the claim does not sound in personal injury. Thus, the four-year residual limitation period applies, TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (Vernon 1997), in its estimation. With this, I respectfully disagree.

The *Wilson* court found a section 1983 violation akin to a personal injury not because of the nature of the remedy available nor because the claim was statutory. Rather, it focused upon the nature of the injury suffered. Because the rights enforceable under section 1983, specifically those of due process and equal protection, "are among the rights possessed by every individual in a civilized society," 471 U.S. at 278–79, 105 S.Ct. at 1948, 85 L.Ed.2d at 268, their violation "is an injury to the individual rights of the person." 471 U.S. at 277, 105 S.Ct. at 1948, 85 L.Ed.2d at 267. In other words, section 1983 does not create the right involved, but merely provides for a remedy. And, when invoked in relation to violations of constitutional rights, the remedy serves to ameliorate injuries to " 'rights which emanate from or are guaranteed to the *person.*'" *Id.* (quoting *Almond v. Kent,* 459 F.2d 200, 204 (1972)) (emphasis added). Thus, violations of constitutional rights are nothing short of personal injuries, according to *Wilson. Id.*

Admittedly, the equal protection right invoked at bar arises under the Texas, as opposed to the United States, Constitution. Nevertheless, the purpose underlying article 1, section 3 of our Constitution is no different than that of its federal cousin. *See Rose v. Doctors Hosp.,* 801 S.W.2d 841, 845 (Tex. 1990) (stating that the interpretation of article 1, section 3 of the Texas Constitution echoes that of the Fourteenth Amendment to the United States Constitution). Both exist to protect rights guaranteed to the person. Thus, I find the rationale and result of *Wilson* persuasive here and conclude that a violation of either constitutional mandate is an injury to the person. Being an injury to the person, the limitations period would be two years as set forth in section 16.003 of the Texas Civil Practice and Remedies Code. Since Su Inn Ho did not act within that period, I would hold that summary judgment was appropriate *viz* her equal protection claim.