Kelly DUNN, and Estate of Richard Gwyn and Loura Shaw Braggs, et al., Appellants,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY and Midland Brighton Pittsford Realty Corporation, Appellees.

No. 08–92–00373–CV.

Court of Appeals of Texas, El Paso.

July 14, 1993.

Rehearing Overruled Sept. 8, 1993.

A.J. Pope, Midland, for appellants.

L. Lloyd MacDonald, Turpin, Smith, Dyer, Saxe & MacDonald, Midland, James M. O'Leary, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Odessa, for appellees.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a take-nothing summary judgment in a wrongful death case in which the trial court granted these Appellees' motion based upon a determination that there was no proximate cause of any alleged negligence resulting in the death of two parties riding on a motorcycle. We affirm.

### Facts

Midland Brighton Pittsford Realty Corporation owns a building located on the north side of Interstate 20 between Midland and Odessa. A service road runs parallel to the highway on the north side of the highway. The building was enclosed with a fence and a person leaving the area of the building would exit through a gate in the fence and then drive south 12 to 16 feet to the service road.

The building was leased to Southwestern Bell Telephone. Bell Telephone had a contract with Hughes Services to perform janitorial services at the building. Joe Espinoza was an employee of Hughes. On September 6, 1989, Espinoza left the Brighton building and drove south out of the gate and onto the service road located north of the interstate highway. When his station wagon pulled onto the service road, it was hit by a motorcycle and the two riders, Richard and Loura Braggs were killed.

The two suits filed by the statutory heirs and beneficiaries of the two deceased persons were consolidated. The five defendants included the two Appellees in this case. Brighton and Southwestern Bell filed a motion for summary judgment asserting that the allegation of negligence in maintaining a fence around their building could not result in any liability because as a matter of law, their

conduct was not a proximate cause of the accident. The trial court granted that motion, entered a take-nothing judgment, and severed the case as to these two defendants.

## Issues

The Appellants contend in three points of error that the trial court erred in granting summary judgment on the grounds that there are material fact issues in dispute and that these Appellees did not establish their right to a judgment as a matter of law. It is also asserted that the court erred in not granting a motion for new trial based upon newly discovered evidence.

## Liability

■ The basic issue concerns liability resulting from a fence located a few feet from a service road and whether it prevented the drivers of the two vehicles from seeing each other in time to have avoided the collision which occurred. We begin by noting that a landowner's duty to exercise reasonable care not to endanger the safety of persons on an abutting highway does not create an obligation to guard passing motorists against the possible negligence of an independent contractor over whom the landowner exercises no control and whose competence to perform his duties the landowner has no reason to doubt. *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189 (Tex.App.—San Antonio 1988, writ denied). To prove a cause of action for negligence, it is necessary to establish a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from the breach. *El Chico Corporation v. Poole*, 732 S.W.2d 306 (Tex.1987). Proximate cause consists of cause in fact and foreseeability. *Id.* at 313. Cause in fact is "but for cause," meaning the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred. *Id.* at 313. If causation is negated as a matter of law, then the moving party is entitled to a summary judgment. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470 (Tex.1991).

## Standard of Review

■ We apply the standards set forth in *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546 (Tex.1985) with the burden of proof upon the movant, all evidence is viewed in a light most favorable to the non-movant, and all reasonable inferences and doubts are resolved in favor of the non-movant. For the movants to prevail on the summary judgment in this case, they must conclusively disprove the element of proximate cause which is an essential element of the Appellants' cause of action. *Menchaca v. Menchaca*, 679 S.W.2d 176 (Tex.App.—El Paso 1984, no writ).

## Analysis

■ On this occasion, Espinoza had finished work and was en route home. He drove up to a gate at the fence and stopped at a stop sign. He then drove south out of the gate and to the service road. He stopped at the service road. There was nothing to obstruct his vision and he looked both directions, to the east and to the west, and did not see any approaching traffic. As he pulled onto the service road to proceed in an easterly direction, his vehicle was hit by the motorcycle which was travelling west on the service road. The investigating officer's report reflects that Espinoza failed to yield the right-of-way to the motorcycle. That report shows the time of the accident as 8:14 p.m. and that the headlights on the station wagon being driven by Espinoza were on.

The evidence established that the fence was 12 to 16 feet from the edge of the service road and it was 18½ feet from the fence to the travel lane of the service road. Mr. Espinoza testified as follows:

Q. Did the fence in front of the Southwestern Bell work center have anything whatsoever to do with that accident?

A. No, sir. No, sir. That was behind me already.

The evidence also indicates that visibility was such that Mr. Espinoza could have seen up to a quarter of a mile to the east after he pulled out from the fence.

The testimony of Espinoza, a party defendant, but one who was not an employee of either of the moving parties, was clear, positive, direct, and free of contradiction. He said he stopped at the fence. He said he stopped at the service road. There was no obstruction to his vision. From the time he stopped at the gate on the fence until he entered onto the service road, he had unobstructed vision to the east. Obviously, he never saw the motorcycle, but the reason he did not see it was not because his view was obstructed by the fence prior to driving onto the service road.

It is also asserted that the fence blocked the view of the driver of the motorcycle and he could not see Espinoza's vehicle before it entered the service road. We accept the contention that the station wagon could not be seen while it was behind the fence some 12 to 16 feet from the service road. But once the vehicle was in view, the driver of the motorcycle had no way of knowing that the driver of that vehicle would pull onto the service road until just before that event occurred. Had the cyclist seen the station wagon two blocks back from the service road, he still would not have known of any danger until that vehicle either failed to stop or stopped and then pulled onto the service road into the path of the motorcycle. Every motorist sees other vehicles approaching intersections as they also approach the intersection. But if they have the right-of-way, they do not stop, they proceed as did the driver of the motorcycle in this case expecting the other vehicles to yield. When the party without the right-of-way fails to yield, there is a collision which is caused by the failure to yield and not a failure to keep a proper lookout by the party having the right-of-way. There is nothing to suggest that had the driver of the motorcycle seen the station wagon sooner, he would have stopped before approaching the side road. He knew he had the right-of-way and to have stopped on a through service road could have resulted in his being rear ended.

Shortly after this accident, Southwestern Bell did in fact relocate the fence by moving it 28 feet to the north. A company interoffice memorandum described the location of the fence as "[a] potential safety hazard." That recommended change did not suggest that those who chose to look could not see approaching traffic as they drove from the gate at the fence to the surface road.

■ This was a very tragic accident which could have been avoided. But the tragedy resulted from Espinoza failing to see that which was within his sight and not from having his vision blocked. Points of Error Nos. One, Two, and Three and overruled. In reaching this result, we recognize that the trial court could consider only the evidence properly before it at the time of the hearing on the motion. *Evans v. Conlee*, 741 S.W.2d 504 (Tex.App.—Corpus Christi 1987, no writ). Tex.R.Civ.P. 166a(c) provides that opposing affidavits and other written responses to a motion for summary judgment shall be filed not later than seven days prior to the day of the hearing. An initial hearing on June 22, 1992 was continued to July 1, 1992. At that time, the court granted the motion and an order was signed on July 14, 1992. The unsworn report of Leonard D. Vaughan filed on June 30, 1992 and the affidavit of Nick Rose, with attached exhibits, filed on July 13 were not properly before the trial court and may not now be considered by this Court in passing on the propriety of the trial court's order. *Lazaro v. University of Texas Health Science Center*, 830 S.W.2d 330 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Evans v. Conlee*, 741 S.W.2d 504.

## Motion for New Trial

■ In the final point of error, it is asserted that the trial court erred in failing to grant a new trial based upon newly discovered evidence. A refusal to grant a motion for new trial is tested by the abuse of discretion standard. *Jackson v. Van Winkle*, 660 S.W.2d 807 (Tex.1983); *Eikenhorst v. Eikenhorst*, 746 S.W.2d 882 (Tex.App.—Houston [1st Dist.] 1988, no writ). Appellate courts should reverse a trial court for abuse of discretion only when "after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable." *Simon v. York Crane & Rigging Co. Inc.*, 739 S.W.2d 793, 795 (Tex.1987). The party moving for a new trial based on newly discovered

evidence must show among other things that (1) the evidence has come to his knowledge since the time of trial and (2) it was not because of a lack of due diligence that the information did not come sooner. *Jackson,* 660 S.W.2d 807.

*Analysis*

 Attached to the motion for new trial which was filed on July 29, 1992 was an affidavit of Leonard D. Vaughan who identified himself as an investigator/consultant for ALFA Engineering, Inc. He concluded:

> If Mr. Espinoza's vehicle failed to come to a complete stop within eleven (11) feet of the right of way of the IH–20 service road, the opaque fence most probably would have limited the ability of the operators of both vehicles to perceive and react to an emergency and therefore, the type and placement of the fence would have been a contributing cause of the collision.

Also attached was an affidavit of Nick Rose, the investigating officer for the Department of Public Safety. He concluded that since there were no skid marks that Espinoza failed to stop before entering the service road. He also states that the fence in all probability did play a significant part in the collision since Espinoza failed to stop before entering the service road. That is the same affidavit as was filed on July 13. Also attached is a second affidavit of Nick Rose dated four days later in which he states that during his investigation, Espinoza volunteered that the fence could have been a cause of the collision.

The trial court was aware that the pleadings in this case were filed more than two years before the final summary judgment hearing. Rose was listed as a person having knowledge of relevant facts in February 1991, sixteen months before the hearing. The bill for services rendered by ALFA Engineering, Inc. was dated July 1, 1991, indicating their analysis was completed more than a year before the hearing. Yet, the affidavits and reports upon which Appellants sought a new trial were not filed until after the deadline for filing a response to the motion for summary judgment had expired. The record is void of any evidence indicating due diligence in obtaining the evidence upon which Appellants rely prior to the hearing. The motion for new trial states:

### C. NEWLY DISCOVERED EVIDENCE

1. New evidence has been discovered, which more conclusively demonstrates and proves that the opaque fence, which was owned by MIDLAND BRIGHTON PITTSFORD, and used by SOUTHWESTERN BELL, was a factor (cause) in the collision, for it obstructed both Defendant Espenoza's [sic] vision and the Braggs' vision. (See, Exhibit E, Affidavit of Officer Rose)[.]

Without any showing of due diligence and that the evidence had come to light after the hearing on the motion, the trial court did not err in overruling the motion for new trial. Point of Error No. Four is overruled.

The order of the trial court is affirmed.