Reversed and Remanded and Memorandum
Opinion filed May 5, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00536-CV



Patrick Becerra, Appellant 

v.

Southwestern
Bell Telephone Company, Appellee 



On Appeal from
the County Civil Court at Law No. 4

Harris County, Texas

Trial Court
Cause No. 941247



 

MEMORANDUM OPINION 

Patrick Becerra appeals the trial court’s final
summary judgment.  In two issues, he argues that the trial court erred in
granting Southwestern Bell’s traditional and no-evidence summary judgment motions
because fact questions exist on his claims for negligence and negligent
training and supervision.  We hold that the record shows genuine issues of
material fact on each claim.  We reverse the trial court’s judgment and remand
for further proceedings.

Background

            During
the late afternoon one day in April 2008, Southwestern Bell employee Louis
Blanchard parked a service truck on Laura Leigh Lane while he repaired an
outdoor cable box.  Laura Leigh Lane is a residential street with one lane in
each direction, east and west.  Blanchard parked the truck in the eastbound
lane a very short distance in front of a “T intersection” where Laura Leigh
Lane continued straight and Townhouse Road connected with the eastbound side of
Laura Leigh Lane.  The truck occupied almost the entire eastbound lane of Laura
Leigh Lane.  The truck had an enclosed rear bed with ladders on top, and it was
about 7.5 feet tall and twelve to fifteen feet in length.  Blanchard placed two
orange cones at the exposed corners of the truck.  Further, to the right of the
truck (off the street) were the following: a light pole, a large oak tree, two
outdoor cable boxes, and an eight-foot tall fence.  Multiple witnesses explained
that these visual obstructions, combined with the Southwestern Bell truck,
created a roughly thirty-foot-wide blind spot from the edge of the fence to the
edge of the truck near the center of Laura Leigh Lane.

While Becerra drove his motorcycle east on Laura
Leigh Lane, Betty Barr was approaching the intersection from Townhouse Road in
her Toyota Camry.  After Barr stopped at a stop sign, she began turning left,
or west, onto Laura Leigh Lane at the same time Becerra moved into the
westbound lane to pass the Southwestern Bell truck.  Becerra’s motorcycle
collided with the front left side of Barr’s vehicle shortly after Becerra
passed the truck.

Becerra sued Southwestern Bell for negligence and
negligent hiring, training, and supervision.[1]
 Southwestern Bell moved for a traditional summary judgment on the negligence
claim and for a no-evidence summary judgment on the negligent hiring, training,
and supervision claim.[2] 
The trial court granted summary judgment on all claims but did not specify in
its order the grounds for the judgment.  This appeal followed.

Standard of Review

We review de novo a trial court’s granting of summary
judgment.  Ferguson v. Bldg. Materials Corp. of Am., 295 S.W.3d 642, 644
(Tex. 2009).  We consider the evidence in the light most favorable to the
nonmovant, indulging reasonable inferences and resolving doubts in the
nonmovant’s favor.  Kane v. Cameron Int’l Corp., 331 S.W.3d 145, 147
(Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing City of Keller v.
Wilson, 168 S.W.3d 802, 823 (Tex. 2005)).  We credit evidence favorable to
the nonmovant if reasonable jurors could and disregard contrary evidence unless
reasonable jurors could not.  Mann Frankfort Stein & Lipp Advisors, Inc.
v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  When, as here, the trial
court does not specify the grounds for its summary judgment, we must affirm if
any of the theories presented to the trial court and preserved for appellate
review are meritorious.  Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 216 (Tex. 2003).

The movant for a traditional summary judgment must
show that there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort, 289 S.W.3d at 848.  Summary
judgment is properly awarded to a defendant if the defendant conclusively
negates at least one essential element of the plaintiff’s claim.  Frost
Nat’l Bank v. Fernandez, 315 S.W.3d 494, 508 (Tex. 2010).  If the defendant
satisfies its burden, the burden shifts to the plaintiff to present evidence
raising a genuine issue of material fact.  Kane, 331 S.W.3d at 147 (citing
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995)).

The movant for a no-evidence summary judgment must
allege that there exists no evidence to support one or more essential elements
of a claim for which the nonmovant bears the burden of proof at trial.  Tex. R. Civ. P. 166a(i); Kane,
331 S.W.3d at 147.  The nonmovant must then present evidence raising a genuine
issue of material fact on the challenged elements.  Kane, 331 S.W.3d at
147 (citing Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex.
2006)).  A no-evidence summary judgment is essentially a pretrial directed
verdict.  Mack Trucks, 206 S.W.3d at 581.

Negligence: Proximate Cause

In his first issue, Becerra contends that the trial
court erred in granting summary judgment to Southwestern Bell based on its
argument that the placement of the Southwestern Bell truck was not a proximate
cause of the collision.  As an element of negligence, proximate cause requires
a showing of both cause in fact and foreseeability.  W. Invs., Inc. v. Urena,
162 S.W.3d 547, 551 (Tex. 2005).  Southwestern Bell essentially argues that it
negated the causation element of negligence by showing that Becerra and Barr
were negligent themselves, and these separate acts of negligence (1) were the only
causes in fact that brought about the collision and (2) were not a foreseeable
result of Blanchard parking the vehicle where he did.  We agree with Becerra
and hold that genuine issues of material fact exist on the proximate cause
element of negligence.  Southwestern Bell has failed to negate proximate cause
as a matter of law.

A.    Cause in
Fact

A defendant’s conduct is the cause in fact of a
plaintiff’s injury if the defendant’s “act or omission was a substantial factor
in causing the injury without which the harm would not have occurred.”  Id. 
The defendant’s conduct is not a substantial factor if the negligence merely
furnishes a condition for the injuries to occur; that is, the defendant’s
conduct is too attenuated from the plaintiff’s injuries to be considered a
substantial factor.  IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v.
Mason, 143 S.W.3d 794, 799 (Tex. 2003).  However, the defendant’s conduct
is a substantial factor if a reasonable person would “‘regard it as a cause,
using that word in the popular sense, in which there always lurks the idea of
responsibility.’”  Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 472
(Tex. 1991) (quoting Restatement (Second)
of Torts § 431 cmt. a (1965)).[3]

Accordingly, we evaluate whether a reasonable person could
regard the particular placement of the Southwestern Bell truck as a cause of
the collision between Becerra and Barr.  In addressing this issue, we are
mindful of three important points.  First, there may be more than one proximate
cause of a plaintiff’s injuries.  Del Lago Partners, Inc. v. Smith, 307
S.W.3d 762, 774 (Tex. 2010); Lear Siegler, 819 S.W.2d at 471.  Second,
under the summary judgment standard, evidence does not conclusively negate the
element of proximate cause if reasonable people could differ in their
conclusions.  See Kane, 331 S.W.3d at 147 (citing City of Keller,
168 S.W.3d at 816).  Third, and somewhat related to the second point, the issue
of proximate cause is usually a question of fact to be resolved by a jury.  See
Farley v. M M Cattle Co., 529 S.W.2d 751, 756 (1975); Clark v. Waggoner,
452 S.W.2d 437, 440 (Tex. 1970).[4]

The record in this case reveals a genuine issue of
material fact that would allow a reasonable fact finder to conclude that the
placement of the Southwestern Bell truck was a substantial factor in the
collision between Becerra and Barr.  Becerra stated in his affidavit and at his
deposition that the Southwestern Bell truck created a blind spot that prevented
him from seeing Barr begin her turn onto Laura Leigh Lane.  Barr stated in her
deposition that the placement of the truck near the other obstructions at the
intersection caused her to not see Becerra approaching on Laura Leigh Lane. 
Blanchard testified that immediately after the accident, Barr claimed she could
not see Becerra because of the parked truck.  When Officer Fred Cramer arrived
shortly after the accident, he spoke to Becerra and Barr separately.  According
to his accident report, each driver told him that the truck “was obstructing
their view of the roadway and that was the cause of the accident.”

At his deposition, Officer Cramer testified that he
thought the positioning of the truck next to the other visual obstructions
created a blind spot for Becerra.  He testified that he thought the truck was a
“contributing factor” to the accident.  He explained further, “I would never
park on Laura Leigh Lane.”  He described the road as somewhat busy, very
narrow, and lacking in lane division markings.  He agreed with Becerra’s
counsel that if he parked on Laura Leigh Lane, he would “know [he] would be
creating a dangerous condition for other users of the roadway.”

Blanchard testified that he parked where he did
because he believed it to be the safest spot on the road at that time.  But
after being questioned about the telephone pole, oak tree, cable boxes, and
fence, he said, “I could see where, if it were me traveling, it would be
difficult to see.”  He acknowledged that his truck created a blind spot for
Becerra, and he explained that if he had seen the blind spot when he parked his
truck, he would have moved it to a different location.

There is, of course, some evidence that Becerra’s and
Barr’s actions were substantial factors in the collision.[5]  Barr
recognized that there was a blind spot before she turned, and she nonetheless
proceeded to turn left onto Laura Leigh Lane.  But the fact that Becerra and
Barr may have been negligent by appreciating the dangerous situation before
proceeding on their courses of action does not completely foreclose Becerra’s
recovery against Southwestern Bell in this case.  A party’s “appreciation of
and voluntary exposure to a dangerous . . . risk is something the jury can
weigh when apportioning responsibility” under the standards of comparative
negligence.  Del Lago Partners, 307 S.W.3d at 772.  In other words, the
evidence of Becerra’s and Barr’s negligence does not conclusively negate the
element of cause in fact when there is some evidence that the placement of the
Southwestern Bell truck was also a substantial factor of the collision.

The evidence in this case is materially distinguishable
from other cases in which a driver claimed that his or her view was obstructed
but the court found a lack of proximate cause.  See Allewitz v. Baltgem Dev.
Corp., No. 03-09-00656-CV, 2010 WL 3191788, at *1–2 (Tex. App.—Austin Aug.
12, 2010, no pet.) (mem. op.) (affirming summary judgment for the defendant
when the plaintiff-driver claimed that bushes on the defendant’s property
obstructed her view, but she testified at her deposition that she “had a view
clear of any obstructions” before she proceeded into the intersection); Dunn
v. Sw. Bell Tel. Co., 860 S.W.2d 571, 574 (Tex. App.—El Paso 1993, writ
denied) (affirming summary judgment for Southwestern Bell when the plaintiffs,
heirs of the deceased occupants of a motorcycle, claimed that a fence
obstructed the view of another driver who failed to yield right of way, which
resulted in the motorcycle colliding with the other driver; explaining that the
undisputed evidence showed that the other driver had a clear view of the road
before turning in the motorcycle’s path).  Here, both drivers consistently and
unequivocally maintained that they could not see each other due to the visual
obstruction created by the Southwestern Bell truck.  Barr did not state that
she proceeded into the intersection with a clear view of oncoming traffic.  She
explained that she “inched” forward as she tried to see around the blind spot
created by the truck.  She testified, “I proceeded very slowly because I could
not see.”

Accordingly, the evidence in this case raises a fact
issue on whether the placement of the Southwestern Bell truck was a cause in
fact of Becerra’s injuries.

B.     Foreseeability

“The test for foreseeability is whether a person of
ordinary intelligence would have anticipated the danger his or her negligence
creates.”  Sw. Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex.
2002).  Here, Southwestern Bell argues that it was not foreseeable that Becerra
and Barr would “fail to avert an injury when they had ample opportunity to do
so.”  Sometimes a defendant may avoid liability because subsequent conduct by
another party interrupts or “supersedes” the defendant’s negligence.  See
Dew v. Crown Derrick Erectors, Inc., 208 S.W.3d 448, 451–52 (Tex. 2005)
(plurality opinion).[6] 
To be considered a superseding cause, the subsequent wrongful conduct of
another party must not be ordinarily or reasonably foreseeable.  Phan Son
Van v. Pena, 990 S.W.2d 751, 755 (Tex. 1999).  The controlling inquiry is
“‘whether the intervening cause and its probable consequences were such as
could reasonably have been anticipated by the original wrongdoer.’”  Dew,
208 S.W.3d at 452 (quoting Bell v. Campbell, 434 S.W.2d 117, 120 (Tex.
1968)); accord Columbia Rio Grande Healthcare, L.P. v. Hawley, 284
S.W.3d 851, 858 (Tex. 2009).  

The movant for summary judgment bears the burden of
conclusively establishing that the subsequent conduct was unforeseeable.  See
Phan Son Van, 990 S.W.2d at 754.  The following factors are relevant to the
inquiry:

(1)       
the fact that the intervening force brings about harm different in kind
from that which would otherwise have resulted from the actor’s negligence;

(2)       
the fact that the intervening force’s operation or the consequences
thereof appear after the event to be extraordinary rather than normal in view
of the circumstances existing at the time of the force's operation;

(3)       
the fact that the intervening force is operating independently of any
situation created by the actor’s negligence, or, on the other hand, is or is
not a normal result of such a situation;

(4)       
the fact that the operation of the intervening force is due to a third
person’s act or to his failure to act;

(5)       
the fact that the intervening force is due to an act of a third person
which is wrongful toward the other and as such subjects the third person to liability
to him; and

(6)       
the degree of culpability of a wrongful act of a third person which sets
the intervening force in motion.

Id. (citing Humble
Oil & Ref. Co. v. Whitten, 427 S.W.2d 313, 315 (Tex. 1968); Restatement (Second) of Torts § 442)). 
The first three factors are particularly important.  See id. at 754–56 (discussing
the factors and focusing on the type of harm and whether the intervening force
was extraordinary or normal); Mathis v. Restoration Builders, Inc., 231
S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (“Mathis easily
meets the foreseeability requirement, because the type of harm that a person of
ordinary intelligence would anticipate from the negligent act is the type of
harm that occurred.”); see also Restatement
(Second) of Torts §§ 447, 449.

            Here, Southwestern
Bell has failed to conclusively establish that any conduct of Becerra or Barr was
so unforeseeable that it should be considered a superseding cause as a matter
of law.  The type of harm that is reasonably foreseeable by creating a visual
obstruction at an intersection is the same type of harm Becerra suffered—a
motor vehicle accident resulting from the inability of drivers to see each
other.  Further, Becerra’s conduct of driving fifteen miles per hour on a road
for which he had the right of way, or Barr’s conduct of slowly “inching” around
the Southwestern Bell truck after stopping at the stop sign, would not be
highly extraordinary under the circumstances.  It is normal and ordinary for a
driver to cautiously continue on his or her path around a parked vehicle rather
than to find an alternate, less direct route.  Becerra’s and Barr’s acts and
the collision would be normal results of creating a visual obstruction at an
intersection, especially on a very narrow and somewhat busy road.

            Analogous decisions
in Texas support the above conclusions.  See Tex. Dep’t of Transp. v. Pate,
170 S.W.3d 840, 843, 847–49 (Tex. App.—Texarkana 2005, pet. denied) (holding
that the evidence was sufficient to affirm the jury’s verdict that the defendant’s
failure to cut trees and vegetation at an intersection with one road controlled
by a stop sign was a proximate cause of the plaintiffs’ injuries; noting that
the drivers could not see each other until the stopped driver pulled into the
intersection, but at that point neither driver could avoid the collision); Tex.
Dep’t of Transp. v. Olson, 980 S.W.2d 890, 895–96 (Tex. App.—Fort Worth
1998, no pet.) (holding that the evidence was sufficient to affirm the jury’s
verdict that the defendant’s failure to prevent shrubbery from obstructing
drivers’ views of oncoming traffic at an intersection was a proximate cause of
the plaintiff’s injuries); Mo. Pac. R.R. v. Lemon, 861 S.W.2d 501,
511–12 & n.2, 516 (Tex. App.—Houston [14th Dist.] 1993, writ dism’d by agr.)
(noting the jury’s finding that the improper parking of train cars near an
intersection, which obstructed the automobile driver’s view and train
conductor’s view, was a proximate cause of a collision between the train and
automobile; holding there was sufficient evidence for the jury to conclude that
the automobile driver was not contributorily negligent partly because the
negligence of the defendant in parking train cars near the intersection caused
the driver’s view to be obstructed); see also Jezek v. City of Midland,
605 S.W.2d 544, 545–46, 548 (Tex. 1980) (imposing a common law duty on cities
to remedy known visual obstructions at intersections; reversing trial court’s
take-nothing judgment when the jury found the city negligent in failing to
maintain vegetation at a T intersection, which obstructed views of drivers and
resulted in accident); Hamric v. Kan. City S. Ry. Co., 718 S.W.2d 916,
920 (Tex. App.—Beaumont 1986, writ ref’d n.r.e.) (reversing summary judgment in
favor of the defendants, a railway company and Southwestern Bell, because the
defendants owed a duty to automobile drivers to clear vegetation that created a
visual obstruction for drivers at an intersection).  But see Fetty v. Miller,
905 S.W.2d 296, 302 (Tex. App.—San Antonio 1995, writ denied) (holding that a
landowner could not reasonably foresee that parking a truck on his property,
off the roadway, would create a hazardous condition for drivers at an
intersection, and thus, the landowner owed no duty to the plaintiff-driver; but
noting that the landowner’s property was not the closest to the intersection, the
truck had been parked at that location on a regular basis for nine years, the
landowner was not aware of any prior accidents at that intersection, and the
plaintiff failed to raise any fact issues on summary judgment).[7]

            Further, courts
in several other jurisdictions have found proximate cause sufficiently established
when a defendant parked a vehicle near an intersection and obstructed the views
of drivers who collided.  See City of Fairbanks v. Nesbett, 432 P.2d
607, 610–11 (Alaska 1967) (affirming the trial court’s denial of a directed
verdict for the city because there was sufficient evidence of proximate cause
when the city’s truck was parked near an intersection and obstructed the
drivers’ views of oncoming traffic; the non-plaintiff driver stopped at a stop
sign before entering the intersection and colliding with the plaintiff, a motorcyclist);
Atl. Mut. Ins. Co. v. Kenney, 591 A.2d 507, 515 (Md. 1991) (holding that
the intermediate appellate court erred in finding a lack of proximate cause as
a matter of law when the defendant parked a tractor trailer near the entrance
to the parking lot of a shopping mall, obstructing the views of drivers who
collided when a driver attempted to leave the parking lot; but noting that
“[p]arking an ordinary vehicle too close to a driveway or an intersection might
not create the same risk”); see also Bergeron v. Greyhound Corp., 100
So. 2d 923, 925 (La. App. 1958) (“It was not strongly argued that the placing
of the parked bus at the intersection of this main highway with the railroad
tracks so as to completely obscure the adjacent tracks or trains from motor
vehicle traffic could not constitute negligence which was a proximate cause of
a resulting train-motor vehicle accident.”).

            Here, Officer
Cramer testified that parking on Laura Leigh Lane creates a dangerous condition
to users of the roadway.  Blanchard explained that he could see how the
positioning of the truck near the other visual obstructions would create a
blind spot for other drivers.  If Blanchard had noticed the blind spot, he
would have moved the Southwestern Bell truck from that location.  It is a
reasonable inference from this testimony that the type of harm resulting in
this case and the intervening conduct of Becerra and Barr were foreseeable—both
could have been reasonably anticipated by Blanchard.

            Finally, Southwestern
Bell has failed to identify any extraordinary conduct of the drivers in this
case that could negate proximate cause as a matter of law.  For example, the
evidence in this case does not show that either driver was intoxicated, see
Bell, 434 S.W.2d at 119, 122, falling asleep, see Lear Siegler, 819
S.W.2d at 471–72, running a red light, see Clark v. Morrison, 177 A.2d
96, 97 (Pa. 1962), or entering the intersection with a clear view of oncoming
traffic, see Allewitz, 2010 WL 3191788, at *1–2; Dunn, 860 S.W.2d
at 574.[8]

            Accordingly,
Southwestern Bell has failed to conclusively negate the element of proximate
cause as a matter of law.  Becerra’s first issue is sustained.

Negligent Hiring, Training, and
Supervision

In his second issue, Becerra argues that the trial
court erred in granting a no-evidence summary judgment to Southwestern Bell on
the claim of negligent training and supervision because there is a fact
question on whether Blanchard was properly trained and supervised to park his
vehicle in a safe manner.  We agree with Becerra.

Southwestern Bell’s no-evidence motion on the
negligent hiring, training, and supervision issue appears in full as follows:

In order to prevail
on a claim for negligent [sic] in failing to properly train, instruct, and
supervise, the Plaintiffs must establish Defendants were negligent in hiring,
training or supervising an employee.  See Castillo v. Gared, Inc., 1
S.W.3d 781, 786 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (claims for
negligent hiring and supervision against employer are not independent causes of
action).

In the instant case, there is no
evidence that Southwestern Bell was negligent in hiring Louis Blanchard or in
failing to properly train, instruct or supervise Louis Blanchard.  As such,
summary judgment must be granted.

A no-evidence motion “must state the elements as to
which there is no evidence.” Tex. R.
Civ. P. 166a(i).  A motion that fails to identify and challenge one or
more essential elements of a claim is insufficient as a matter of law and
cannot sustain a summary judgment.  Cuyler v. Minns, 60 S.W.3d 209,
212–13 (Tex. App.—Houston [14th Dist.] 2001, pet denied).

Southwestern Bell’s motion on this claim does not explicitly
challenge the duty, breach, or causation-of-injury elements—the essential
elements of negligent hiring, training, and supervision.  See Zarzana v.
Ashley, 218 S.W.3d 152, 158 (Tex. App.—Houston [14th Dist.] 2007, pet.
struck).  The purposes of requiring a movant to challenge a particular element are
to give “fair notice” to the nonmovant about what type of evidence must be
brought forward to defeat the motion and to help define the issues for the
court.  See Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 311 (Tex.
2009).  To determine which elements, if any, are fairly raised by the motion
and were before the trial court, we may look to the language of the motion,
Becerra’s complaint, and Becerra’s response.  See id. (reviewing the
language of the motion, the complaint, and the response to determine what
issues were fairly raised and joined).

The only element fairly challenged in Southwestern
Bell’s motion is “breach.”  Southwestern Bell does not suggest by any language that
it did not owe a duty to exercise reasonable care in hiring or training
Blanchard.  Nor does Southwestern Bell suggest that Becerra’s injuries were not
the result of any such failure to properly hire or train.  The motion simply
argues that there is no evidence that Southwestern Bell actually failed to
properly hire, train, supervise, or instruct its employee.  Becerra’s complaint
clearly distinguishes the elements of duty, breach, and causation.  But
Becerra’s response focuses solely on Southwestern Bell’s conduct:
inadequate training.  The motion and response address only the issue of breach,
and the other elements were not fairly raised in the trial court.

Assuming without deciding that Southwestern Bell owed
a duty to Becerra to instruct or train Blanchard on how to park a truck without
creating blind spots at intersections, Becerra presented sufficient evidence to
avoid summary judgment that Southwestern Bell did not breach this duty.  Blanchard
testified that he received some hands-on training about safe driving and
parking, but he did not recall specific training on how to avoid creating blind
spots.  A portion of a Southwestern Bell training document was also included in
the summary judgment record.  Although the document lists at least ten specific
rules or guidelines for parking, instructs drivers to consider a number of
factors when selecting a proper parking space, and instructs drivers to “check
mirrors and blind spots” before entering the vehicle to leave a parking space,
the training instructions do not inform a driver that he or she should avoid
parking near intersections or otherwise guard against creating blind spots.

This evidence raises a genuine issue of material fact
on the element of breach.  Accordingly, Becerra’s second issue is sustained.

Having sustained both of Becerra’s issues, we reverse
the trial court’s judgment in full and remand for further proceedings.

 

                                                                                    

                                                                        /s/        Sharon
McCally

                                                                                    Justice

 

 

Panel consists of Justices Anderson,
Seymore, and McCally.









[1]
Barr was a codefendant, but she settled with Becerra and is not a party on
appeal.





[2]
The summary judgment evidence includes, among other things, (1) transcripts of
depositions of Becerra, Barr, Blanchard, and Officer Fred Cramer, a patrol
officer who was dispatched to the accident scene; (2) an accident report
completed by Officer Cramer; (3) an affidavit by Becerra; (4) pictures of the
scene of the accident taken at a later date without the truck parked at the
scene; and (5) part of a Southwestern Bell training manual.





[3]
The “popular sense” is distinguished from the “‘philosophic sense, which
includes every one of the great number of events without which any happening
would not have occurred.’”  Lear Siegler, 819 S.W.2d at 472 (quoting Restatement (Second) of Torts § 431
cmt. a).





[4]
See also, e.g., Tex. Dep’t of Transp. v. Pate, 170 S.W.3d 840,
848 (Tex. App.—Texarkana 2005, pet. denied) (“Whether a particular act of
negligence is a cause-in-fact of an injury is a particularly apt question for
jury determination.”); Berry Prop. Mgmt., Inc. v. Bliskey, 850 S.W.2d
644, 656 (Tex. App.—Corpus Christi 1993, writ dism’d by agr.) (“Texas courts
routinely hold that proximate causation is a fact question within the jury’s
province.”); Ramey v. Collagen Corp., 821 S.W.2d 208, 212 (Tex.
App.—Houston [14th Dist.] 1991, writ denied) (“[T]he question of proximate
causation is one of fact peculiarly within the province of the jury, and the
jury finding on it will be set aside only in the most exceptional
circumstances.” (quotation omitted)); Walkoviak v. Hilton Hotels Corp.,
580 S.W.2d 623, 628 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref’d
n.r.e.) (“‘Ordinarily (of course,) the question of whether an act of negligence
was a proximate cause of the consequences presents an issue for determination
by the fact finder.’” (quoting Clark, 452 S.W.2d at 440)); Espinosa
v. Hudson, 531 S.W.2d 248, 250 (Tex. Civ. App.—Tyler 1975, no writ) (“The
general rule in automobile cases is that proximate cause is a question of fact
for a jury determination.”); Permian Mud Serv., Inc. v. Sipes, 339
S.W.2d 81, 84 (Tex. Civ. App.—Eastland 1960, no writ) (“It is rarely held that
proximate cause is established as a matter of law. Usually, it is a question of
fact.”).





[5]
Officer Cramer noted in his accident report that Barr failed to yield right of
way, was inattentive, and turned when unsafe.  Barr acknowledged at her
deposition that she failed to yield right of way.  Officer Cramer further noted
in his report that Becerra failed to pass on the left safely, was inattentive,
and failed to control his speed.  Becerra was passing the truck at about
fifteen miles per hour.  





[6]
A subsequent act of negligence that does not supersede the defendant’s original
negligence has been described as a “concurring” cause.  Dew, 208 S.W.3d
at 451.  Both a concurring cause and superseding cause are considered
“intervening” forces or acts.  Id. at 451–52.





[7]
Although most of these cases were decided in the context of premises liability
claims, the proximate cause analysis is the same inquiry in an ordinary
negligence case.  See Reinicke v. Aeroground, Inc., 167 S.W.3d 385, 387
n.2 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (plurality opinion)
(noting that proximate cause is an overlapping element of both ordinary
negligence and premises liability claims); id. at 391 (Fowler, J.,
concurring) (concluding that the trial court properly submitted the case under
a general negligence theory rather than premises liability and the controlling
issue was proximate cause; plaintiff-driver struck a vehicle negligently parked
on the shoulder); id. at 394, 396 (Seymore, J., dissenting) (same); Univ.
of Tex. at Austin v. Hinton, 822 S.W.2d 197, 204 (Tex. App.—Austin 1991, no
writ) (concluding that a general negligence instruction could support the
verdict in this premises liability case).





[8]
Southwestern Bell relies primarily on two cases to support its argument.  See
Reinicke, 167 S.W.3d 385; Wolf v. Friedman Steel Sales, Inc., 717
S.W.2d 669 (Tex. App.—Texarkana 1986, writ ref’d n.r.e.).  These cases are
inapposite.  Wolf involved the intentional criminal conduct of a third
party who stole a truck with a readily apparent defect, and the truck stalled,
causing an accident.  717 S.W.2d at 671.  Although the defendant knew of the
defect, he had no reason to foresee that someone would steal the truck and
drive it with the obvious defect.  Id. at 674.  In Reinicke, a
driver veered off a highway for no apparent reason and struck a vehicle parked
on the side of the road, not in a lane of travel.  167 S.W.3d at 389.  The
court held that the mere parking of the defendant’s vehicle outside any lanes
of travel was not a cause in fact of the accident because the other driver
inexplicably left the roadway to collide with the parked vehicle.  Id.; id.
at 392–93 (Fowler, J., concurring).  The present case does not involve
unforeseeable criminal conduct, and Becerra’s and Barr’s acts were fully explainable
and directly related to the risk created by a visual obstruction at an
intersection.