# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00602-CV

---

**Alexander Sonnenschein, Appellant**

**v.**

**Augustin Rivera, Jr.; Teresa Ereon Giltner; Harold Odom; Barbara Ellis; Anna M. McKim; Cynthia Eva Hujar Orr; C. Alfred Mackenzie; Dwaine M. Massey; and Carlos R. Soltero; In Their Official Capacities as Members of the Texas Board of Law Examiners, Appellees**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-007213, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Dr. Alexander Sonnenschein (Sonnenschein) sued the members of the Texas Board of Law Examiners (Board Members)[1] in their official capacities after the Board denied his request to be admitted to the Texas Bar without taking the bar examination.[2] Sonnenschein asserted ultra vires claims against the Board Members, who filed a plea to the jurisdiction arguing that the trial court lacked subject-matter jurisdiction over the suit. The trial court granted the plea, and Sonnenschein appealed. For the following reasons, we affirm the trial court's order on all claims

---

[1] Board Members are Augustin Rivera, Jr., Teresa Ereon Giltner, Harold Odom, Barbara Ellis, Anna M. McKim, Cynthia Eva Hujar Orr, C. Alfred MacKenzie, Dwaine M. Massey, and Carlos R. Soltero.

[2] Sonnenschein also sued Executive Director of the Board Susan Henricks, and Eligibility Director of the Board Nahdiah Hoang, but dismissed them in his amended notice of appeal.

except those alleging violations of Sonnenschein's rights to equal protection, which claims we reverse and remand to the trial court to allow Sonnenschein an opportunity to amend his pleadings to allege sufficient facts to support them.[3]

## BACKGROUND

In 2012, Sonnenschein earned a J.D. from Northwestern California University (NWCU) School of Law, a non-ABA-approved law school that was "registered and regulated" by the State Bar of California although not "accredited" by that state. The California Bar nonetheless authorized NWCU law school graduates to sit for the California Bar Exam after successfully passing the state's First-Year Law Students' Examination and completing a four-year course of study. After graduating, Sonnenschein passed the California Bar Exam on his first effort and obtained a California law license in December 2012.

Shortly thereafter, Sonnenschein moved to Massachusetts where he sought admission to the state's bar. The Massachusetts Board of Bar Examiners permitted Sonnenschein to take the February 2013 Massachusetts Bar Exam by waiving its requirement that applicants be

---

[3] Sonnenschein filed this suit on November 24, 2020. Sonnenschein's wife, Deborah Sonnenschein, also graduated from Northwestern California University (NWCU) in 2012 and submitted an application for admission to the Texas Bar, which was similarly denied. She filed a separate but nearly identical lawsuit the same day as Sonnenschein, alleging identical causes of action against the same defendants. In that case, the trial court granted the Board Members' plea as to the claims against Henricks and Hoang, but denied the Board Members' plea to the jurisdiction in all other respects. The Board Members appealed, and this Court reversed the trial court's order and rendered judgment on all claims except Ms. Sonnenschein's claims for violation of her rights to equal protection, which we remanded to the trial court to provide her the opportunity to plead facts that affirmatively establish subject-matter jurisdiction. *See Rivera v. Sonnenschein*, No. 03-21-00516-CV, 2022 WL 1751685, at *1 (Tex. App.—Austin, June 1, 2022, pet. denied) (mem. op). Because both suits allege the same causes of action and seek the same relief, our analyses here are identical to those set forth in No. 03-21-00516-CV, unless otherwise specifically stated.

2

graduates of law schools that are either ABA-approved or authorized by the Commonwealth of Massachusetts. Sonnenschein passed that exam on his first effort and obtained a Massachusetts law license in June 2013. Thereafter, Sonnenschein and his wife established a Massachusetts law firm and practiced law for more than five years.

In late 2018, the Sonnenscheins moved to Texas and, since Spring 2019, both have been providing pro bono legal representation to low-income Texas clients via Volunteer Legal Services of Central Texas, as authorized by the Texas State Bar under its New Opportunities Volunteer Attorney (NOVA) pro bono program for attorneys licensed in other states.

In April 2019, Sonnenschein submitted to the Board an application to be admitted to the Texas Bar without examination (commonly called an AWOX application) pursuant to Rule 13, Section 1 of the Rules Governing Admission to the Bar of Texas (Rules), which then provided,

> An Applicant who is authorized to practice law in another state must meet the requirements imposed on any other Applicant under these Rules, except that the Applicant is exempt from the requirement of successfully completing the Texas Bar Examination if the Applicant:
>
> (a) has been actively and substantially engaged in the lawful practice of law as the Applicant's principal business or occupation for at least five of the last seven years immediately preceding the filing of the Application;
>
> (b) has a J.D. degree from an approved law school; and
>
> (c) has not failed the Texas Bar Examination.

Tex. Rules Govern. Bar Adm'n R. 13, § 1 (Sept. 8, 2017), *amended eff.* Dec. 1, 2019. In August 2019, the Board declared Sonnenschein's AWOX application ineligible because he did not meet Rule 13, Section 1(b)'s requirement that he have a J.D. from an ABA-approved law school (the law-study requirement). *See id.* R. 1(a)(4) (defining "approved law school" as "a law school

3

approved by the American Bar Association"). In response, Sonnenschein requested a waiver under Rule 20, asking the Board to waive the law-study requirement for his AWOX application. In support of the waiver request, Sonnenschein provided documentation and a memo, including a reference to a "similarly situated applicant" who in 2017 was granted "essentially the same waiver" and admitted to the Texas Bar. *See id.* R. 20(e) (granting Board "discretion in the interpretation and application of these Rules" and providing that for "good cause shown to the satisfaction of the Board," "waivers of specific requirements described in these Rules may be granted, unless it appears therefrom that no exceptions are contemplated by the Supreme Court"). The Board scheduled Sonnenschein's waiver request to be considered at a public meeting in September 2019.

At the public meeting, before a three-member panel considering waiver requests, Sonnenschein (who is white) and his wife (who is Black) appeared and spoke in support of their similar requests. Later that month, the Board issued its final decision denying Sonnenschein's waiver request and terminating his AWOX application. Sonnenschein filed a motion for rehearing with the Board, "in the erroneous belief that the Board was subject to the Texas Administrative Procedure Act ('APA')." In October 2019, Susan Henricks, the Board's Executive Director, sent Sonnenschein a Summary Letter explaining why he did not qualify for admission without taking the bar examination under Rule 13—because "the JD [he] earned at an unaccredited [online] school does not satisfy the education requirements" of the rule. In the letter, the Board explained that it had not yet developed AWOX waiver-request licensing guidelines mandated by Texas Government Code Section 82.039;[4] that it was not subject to the APA; that its decision was "final

---

[4] Sonnenschein alleged that the Board Members violated Section 82.039 of the Government Code by failing to develop specific guidelines for granting waiver requests. *See* Tex. Gov't Code § 82.039(a) ("To assist the Board of Law Examiners in making consistent and fair

4

and unappealable"; and that even under the impending revised rules (effective December 1, 2019), Sonnenschein would not meet the law-study requirement to take the Texas bar exam because NWCU's law school, while "state-authorized," was not "state-accredited." *See id.* R. 13, § 2 (providing exemption from Rule 3's law-study requirement for applicant authorized to practice law in another state who holds J.D. "from an unapproved law school that is accredited in the state where it is located"). The Board further explained that even if NWCU were to meet the definition of "state-accredited", it would still be ineligible to satisfy the law-study requirement because Sonnenschein's J.D. was earned through primarily online courses. *See id.* § 5 ("No Degree by Correspondence") (precluding applicant from satisfying law-study requirement "with a J.D. obtained primarily through online courses or other distance learning methods.").

Sonnenschein brought ultra vires claims against the Board Members for allegedly violating Texas Government Code Section 82.039, Texas Civil Practice and Remedies Code Subsection 106.001(a)(1), and his Texas constitutional rights to equal protection and procedural and substantive due course of law.[5] He sought declaratory relief, seeking a declaration that graduates of law schools such as NWCU's be treated by the Board as "on par with graduates of state-accredited law schools from other jurisdictions." He also sought injunctive relief requiring the Board to develop specific guidelines for granting AWOX waiver requests and to approve his

---

determinations related to the licensing of attorneys in this state, the board shall develop specific guidelines for . . . granting waiver requests.").

[5] Although Sonnenschein did not use the phrase "ultra vires" in his petition, he cited *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009), in support of the trial court's jurisdiction. That case explained that ultra vires suits seeking to compel officials to comply with statutory or constitutional provisions or asserting that officials acted without legal authority or failed to perform a purely ministerial act are not barred by sovereign immunity. *See Heinrich*, 284 S.W.3d at 372.

AWOX application. The Board Members filed a plea to the jurisdiction, arguing, among other things, that Sonnenschein had not stated a viable ultra vires claim against the Board Members and that he failed to show the violation of—or even the existence of—a constitutionally protected right. The trial court granted the Board Members' plea, dismissing Sonnenschein's claims in their entirety and rendering judgment in favor of the Board Members. This appeal followed.

**DISCUSSION**

A plea to the jurisdiction challenges a court's jurisdiction to hear the case. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction without regard to whether the asserted claims have merit. *See Harris County. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)*; see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a pleader has alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction is a question of law reviewed de novo. *See Miranda*, 133 S.W.3d at 226. The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *See Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). In reviewing a plea to the jurisdiction, we begin with the plaintiff's live pleadings and determine if the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *See Miranda*, 133 S.W.3d at 226. In making this assessment, we construe the plaintiff's pleadings liberally, taking all assertions as true, and look to the plaintiff's intent. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.* at 227; *see also Bland Indep. Sch. Dist*, 34 S.W.3d at 555. "Our ultimate inquiry is whether the plaintiff's pleaded and un-negated facts, taken as true

6

and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's jurisdiction." *Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 94 (Tex. App.—Austin 2011, no pet.). Courts must consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry and take care not to weigh the merits of the case. *See County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

### Due course of law claims

In his first two causes of action, Sonnenschein alleged that the Board Members violated his Texas constitutional rights to substantive and procedural due course of law in the pursuit of his "liberty interest to practice his profession."[6] *See* Tex. Const. art. I, §§ 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land."), 29 (providing that Bill of Rights (Sections 1–35) "shall forever remain inviolate" and all laws contrary thereto "shall be void"); *Ho v. University of Tex. at Arlington*, 984 S.W.2d 672, 683 (Tex. App.—Amarillo, 1998) (pet. denied) (noting that substantive component of due course of law guarantee protects citizens from state action that arbitrarily or capriciously deprives them of interest in life, liberty, or property). However, as the Board Members argued in their plea to the jurisdiction, before due process rights

---

[6] In his petition, Sonnenschein specified that he "only alleges state law claims" and "specifically excludes . . . any federal cause of action" including those arising under the federal Constitution. We note that Texas courts evaluate equal protection challenges under the Texas Constitution using the same standard for equal protection challenges brought under the federal Constitution, *see Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002), and due course of law claims under the Texas Constitution using the same standard as that applied to due process claims under the federal Constitution, *University of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

attach, a citizen must identify the liberty or property interest that is entitled to constitutional protection. *See Honors Acad. Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018).

The record demonstrates that Sonnenschein failed to identify any legally protected liberty or property interest in his petition or response to the Board Members' plea to the jurisdiction and has failed on appeal to cite any authority supporting his contention that he has a constitutionally protected interest in obtaining a Texas law license. Rather, he has no right— liberty or otherwise—to be admitted to the Texas Bar except in conformity with the Supreme Court's Rules. *See* Tex. Gov't Code §§ 82.001 ("The supreme court shall appoint the members of the [B]oard."), .004 ("The Board, acting under instructions of the supreme court as provided by this chapter, shall determine the eligibility of candidates for examination for a license to practice law in this state . . . [and] shall examine each eligible candidate as to the candidate's qualifications to practice law."), .021 ("Only the supreme court may issue licenses to practice law in this state as provided by this chapter. The power may not be delegated."), .022 ("The supreme court may adopt rules on eligibility for examination for a license to practice law . . . ."). The practice of law is a profession and a privilege that the United States Supreme Court has identified as one for which a state "can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar." *See Schware v. Board of Bar Exam'rs of State of New Mexico*, 353 U.S. 232, 239 (1957); *see also Hankamer v. Templin*, 187 S.W.2d 549, 551 (Tex. 1945) ("[T]he right to practice law is not a personal right, but a franchise, or privilege[.]"); *State v. Arnett*, 385 S.W.2d 452, 454 (Tex. App.—San Antonio 1964, writ ref'd) ("The right to practice the profession of law is a very great privilege.").

Because Sonnenschein did not identify any constitutionally protected property or liberty interest, he has not alleged a viable claim for violation of substantive due course of law,

and the trial court did not err in granting the Board Members' plea to the jurisdiction as to that cause of action. *See Honors Acad.*, 555 S.W.3d at 61. For the same reason, the trial court did not err in dismissing his claims for violation of his procedural right to due course of law. *See Texas S. Univ. v. Villarreal*, 620 S.W.3d 899, 905 (Tex. 2021) (noting that to determine whether governmental action violates due course of law guarantee, courts first ask whether plaintiff has liberty or property interest that is entitled to protection and, if so, whether government defendant followed due course of law in depriving plaintiff of that interest); *Than*, 901 S.W.2d at 929 ("The requirements of procedural due process apply only to the deprivation of interests protected under Article I, Section 19.").

### Tex. Gov't Code § 82.039(a)

Within his first, second, and third causes of action, Sonnenschein alleged that the Board Members violated Section 82.039 of the Texas Government Code by failing to develop specific guidelines for granting waiver requests. *See* Tex. Gov't Code § 82.039(a) ("To assist the Board of Law Examiners in making consistent and fair determinations related to the licensing of attorneys in this state, the board shall develop specific guidelines for . . . granting waiver requests."). Sonnenschein does not have standing to pursue his ultra vires claims against Board Members arising from their alleged violation of Section 82.039. While that section provides that the Board "shall develop the [required] guidelines . . . based on [its] past decisions and on any other criteria [it] considers necessary," it also provides that the Board is "not required to take any specific action provided in the guidelines." *See* Tex. Gov't Code § 82.039(b). To have standing under the facts alleged, Sonnenschein must have a concrete or particularized stake in the declaration he sought that the Board Members acted ultra vires by failing to develop guidelines

9

specific to waiver requests and that such declaration and any related injunctive relief will redress his alleged injury. *See Garcia v. City of Willis*, 593 S.W.3d 201, 207 (Tex. 2019). The very statute that Sonnenschein contends the Board Members violated—by not developing guidelines to use in evaluating waiver requests—provides Board Members with complete discretion in determining whether to grant waiver requests—by stating that, regardless of what the guidelines provide, the Board is not required to take any specific action. Therefore, Sonnenschein cannot demonstrate any legal injury, much less that the Board's development of such guidelines would redress any alleged past injury. *See Suarez v. Silvas*, No. 04-21-00113-CV, 2022 WL 379965, at *9 (Tex. App.—San Antonio Feb. 9, 2022, pet. denied.) (mem. op.) (holding that plaintiff did not have standing to pursue ultra vires claim because she did not plead facts to show (1) concrete and particularized or actual or imminent injury or (2) that her requested prospective relief would likely redress her past injury). Accordingly, the trial court lacked subject-matter jurisdiction over Sonnenschein's Section 82.039 claim and therefore did not err in granting the Board Members' plea on this claim.

### *Equal protection claims*

In his third and fourth causes of action, Sonnenschein alleged, respectively, that the Board Members violated his Texas constitutional and statutory rights to equal protection by (a) engaging in "apparent invidious discrimination due to his interracial marriage and national origin" through their "grossly disparate treatment" of him and a similarly situated prior applicant and (b) failing to treat his law study as equivalent to that of previous applicants who also had graduated from non-ABA-approved law schools but were nonetheless granted admittance to the Bar. *See* Tex. Const. art. I, §§ 3 ("All free men, when they form a social compact, have equal

10

rights . . . ."), 3a ("Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin."); Tex. Civ. Prac. & Rem. Code § 106.001(1) (prohibiting state officials and employees from refusing to issue license, permit, or certificate "because of a person's race, religion, color, sex, or national origin").

As to his third cause of action, he alleged the following facts: that the Board Members approved the waiver request for an AWOX application of a white male in 2017 who had graduated from "the same category of California-registered-unaccredited law schools" that he had graduated from but that the Board denied his substantially similar waiver request and AWOX application "due to" his interracial marriage and national origin. As to his fourth cause of action, Sonnenschein alleged that the Board Members have "previously accepted the law study of graduates of non-ABA-approved state-authorized law schools in Alabama, Massachusetts, [and] California" but declined to accept his law study of the same type, which violated his right to equal protection under the law, regardless of whether Board Members based their decision on a suspect classification (e.g., race or sex).[7]

The Board Members argued in their plea to the jurisdiction that Sonnenschein had not alleged sufficient facts to demonstrate the trial court's jurisdiction over his claim that they violated his rights to equal protection. Furthermore, they argued, Sonnenschein *could not* allege sufficient facts to support his claims because their denial of his AWOX application and request to

---

[7] In his petition, he further explained that California "regulates local non-ABA-approved law schools of two types: 'accredited' schools, whose students must complete a 3-year study program, and 'registered unaccredited' schools, whose students are required to first pass the First-Year Law Students' Exam ('Baby Bar') before completing a 4-year study program." He alleged that "California regards graduates of both types of schools, as well as graduates of ABA-approved schools, as being on an equal footing with regard to being authorized to take the California Bar Exam and, upon passing the exam, being admitted to the California Bar."

11

waive the law-study requirement was the "expected result of uniform application of the Rules," which unequivocally provide that a J.D. obtained primarily through online courses or other distance-learning methods—as Sonnenschein's was—does not meet the law-study requirement. *See* Tex. Rules Govern. Bar Adm'n R. 13, § 5 (Sept. 8, 2017), *amended eff.* Dec. 1, 2019 (current version appearing as R. 13, § 6) ("A J.D. degree or an equivalent degree completed at a foreign law school that is earned primarily through online courses or other distance learning-learning mediums does not satisfy the requirements of this Rule."). However, despite Rule 13's provision that applicants from jurisdictions other than Texas may not satisfy the law-study requirement with a J.D. earned "primarily through online learning," we do not agree with the Board Members that the existence of such provision precludes, as a matter of law, an equal protection claim. Sonnenschein is contending that the Board Members did *not* uniformly apply this provision to his application as compared to those of others similarly situated, a colorable claim falling under protection of the equal protection clauses.[8] *See Whitworth v. Bynum*, 699 S.W.2d 194, 197 (Tex. 1985) ("Under the rational basis test . . . similarly situated individuals must be treated equally under the statutory classification unless there is a rational basis for not doing so."); *see also Lindquist v. City of Pasadena*, 525 F.3d 383, 386–87 (5th Cir. 2008) (recognizing that equal protection guarantee extends to claims of intentional, differential treatment of person from others similarly situated when there is no rational basis for difference, such as city's refusal to grant used-car-dealer license to plaintiff while granting them to others similarly situated); *Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 275 n.13 (Tex. App.—Austin 2007, pet. denied)

---

[8] Sonnenschein also contests the Board's construction of the "no degree by correspondence" provision (Rule 13 § 5)—arguing that "foreign" refers to non-U.S. jurisdictions rather than other states—but we need not resolve this legal question at this stage.

("Claims of selective or discriminatory enforcement fall within the scope of the constitutional guarantee of equal protection under the law.").

The elements of a claim for violation of the equal protection clause based on a party's membership in a protected class are that the challenged act had a disproportionate impact on a protected class and had a discriminatory intent or purpose. *See Richards v. League of United Latin Am. Citizens (LULAC)*, 868 S.W.2d 306, 312 (Tex. 1993); *Ho*, 984 S.W.2d at 685 ("Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). In his third cause of action, Sonnenschein alleges the Board Members discriminated against him because of his national origin and interracial marriage. While he has alleged that he is a member of a protected class, he has not alleged any discriminatory intent or disparate impact on a protected class—rather, he makes the conclusory allegation of "apparent invidious discrimination." The only mention of Sonnenschein's national origin is one sentence in his petition stating he immigrated to the United States from Poland at the age of seven. Construing the pleadings liberally in favor of jurisdiction and accepting the allegations in Sonnenschein's pleadings as true, as we must do under a de novo review of a ruling granting a plea to the jurisdiction, we cannot say that he has alleged sufficient facts to affirmatively demonstrate that the trial court has jurisdiction to hear his equal protection and Section 106.001 claims of alleged national origin or racial discrimination based on his interracial marriage. *See Miranda*, 133 S.W.3d at 226 (Tex. 2004). However, we cannot conclude that his petition affirmatively demonstrates incurable defects of jurisdiction. *See id.* at 226–27. Accordingly, although the trial court did not have jurisdiction over Sonnenschein's equal protection and Section 106.001 claims based on national origin or racial discrimination as pleaded, Sonnenschein should be afforded the opportunity to amend his pleadings with respect to those claims. *See id.*; *see also Port of*

13

*Corpus Christi, LP v. Port of Corpus Christi Auth. of Nueces Cnty.*, No. 13-19-00378-CV, 2021 WL 2694772, at *12–13 (Tex. App.—Corpus Christi–Edinburg Jul. 1, 2021, no pet.) (mem. op.) (concluding that trial court erred in dismissing equal protection claim without affording plaintiff opportunity to amend pleadings that did not contain sufficient facts demonstrating elements of claim but that did not affirmatively demonstrate incurable defects); *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 518 (Tex. App.—Austin 2014, no pet.) (remanding to allow plaintiff reasonable opportunity to amend pleadings to cure jurisdictional defect as to equal protection claim where petition was "insufficient to invoke the district court's subject-matter jurisdiction" but did not "affirmatively negate jurisdiction either").

As to Sonnenschein's fourth cause of action—an equal protection claim arising from the Board Members allegedly treating him differently from other similarly situated individuals with respect to the type of law study they completed—we similarly conclude that he has not alleged sufficient facts to affirmatively demonstrate that the trial court has jurisdiction. *See Miranda*, 133 S.W.3d at 226. Specifically, he does not allege facts showing that he was similarly situated to other applicants in all material ways or that the Board Members treated him differently without a reasonable basis. [9] *See Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 647 (Tex. 2004) (noting that to bring individual equal protection claim, plaintiff must demonstrate that she was intentionally singled out and treated differently from others similarly situated); *City of Floresville v. Starnes Inv. Grp., LLC*, 502 S.W.3d 859, 868 (Tex.

---

[9] For instance, he did not allege whether such other "similarly situated" graduates of "non-ABA-approved state-authorized law schools" who submitted AWOX applications, completed their law studies "primarily through online courses," were permitted to take the Texas Bar despite not meeting the law-study requirement, or met the other requirements of admission to the Bar.

14

App.—San Antonio 2016, no pet.) (reversing trial court's denial of plea to jurisdiction as to equal protection claim because pleading made mere conclusory statement that plaintiff was treated differently from others similarly situated but did not allege any facts describing how parties were similarly situated or nature of alleged different treatment); *Sanders v. Palunsky*, 36 S.W.3d 222, 225 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("[T]o assert an equal protection claim [that is not based on a suspect class], the deprived party must establish two elements: (1) that he was treated differently than other similarly-situated parties; and (2) he was treated differently without a reasonable basis."); *see also John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000) ("The Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently."). Accordingly, Sonnenschein's pleadings, on their face, failed to invoke the trial court's jurisdiction. However, we again cannot conclude that his pleadings affirmatively demonstrate incurable defects of jurisdiction. *See Miranda*, 133 S.W.3d at 226–27. Because this is an issue of pleading sufficiency, we must remand this claim to the trial court to afford Sonnenschein the opportunity to amend his pleadings to sufficiently invoke the trial court's jurisdiction. *See id.*; *City of Austin v. Cherry*, No. 03-14-00212-CV, 2015 WL 4508819, at *2 (Tex. App.—Austin July 21, 2015, no pet.) (mem. op.) (reversing trial court's order denying city's plea to jurisdiction and remanding cause to allow plaintiff to amend pleadings that were insufficient to affirmatively demonstrate jurisdiction but did not demonstrate incurable defects in jurisdiction).

***Uniform Declaratory Judgment Act (UDJA) claims***

Lastly, Sonnenschein sought the following declarations under Chapter 37 of the Civil Practice and Remedies Code: (1) Sonnenschein "has the right to judicial appeal of [Board

15

Members'] decisions . . . that allegedly violate Texas constitutional or statutory provisions," (2) Board Members' "willful failure to develop and use" the guidelines prescribed by Government Code Section 82.039 caused their evaluation of Sonnenschein's waiver request "to be unlawful," and (3) Sonnenschein's "status as a graduate of a California-registered law school should be deemed equivalent to that of a graduate of a non-California state-accredited law school and thereby accepted as sufficient under the law-study exception." *See* Tex. Civ. Prac. & Rem. Code § 37.004(a) ("A person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder."). The Board Members contended in their plea to the jurisdiction that these claims must be dismissed because in essence they constitute rule challenges, which must be filed against the Board. *See* Tex. Gov't Code § 2001.038(c) (requiring state agency to be party to rule challenge); *see also B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017) ("The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled, allowing courts to determine the rights and liabilities of the involved parties.").

As to his first and third requested declarations, Sonnenschein does not cite any statute affecting his "rights, status, or other legal relations." *See* Tex. Civ. Prac. & Rem. Code § 37.004(a). His sought declarations are therefore not within the scope of the UDJA. *See id.*; *Tijerina v. Texas Prop. Cas. Ins. Guar. Ass'n*, No. 03-13-00300-CV, 2015 WL 869344, at \*3 & n.6 (Tex. App.—Austin Feb. 26, 2015, pet. denied) (mem. op.) (concluding that when plaintiff had not challenged validity of any statute or sought declaration of rights thereunder but merely challenged agency's actions, UDJA did not apply, although plaintiff could assert ultra vires claims against state actors in their official capacities). Furthermore, his first sought declaration would not

16

resolve any controversy between him and the Board Members because—notwithstanding the absence of any statute providing him a right to judicial review of the Board's decision—it is settled law that he may sue the Board Members for their alleged ultra vires actions, which is what he has done through this lawsuit. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009). And, as the Board Members argued in their plea to the jurisdiction, the gravamen underlying Sonnenschein's third requested declaration is that the Board Members have allegedly misconstrued or misapplied the Rules, a type of challenge that falls under the APA and for which a UDJA claim would be redundant and thus jurisdictionally barred, *see Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 746–47 (Tex. App.—Austin 2014, pet. dism'd), and which must be brought against the Board in any event, *see* Tex. Gov't Code § 2001.038(c).

While as to his second requested declaration Sonnenschein cites a statute—Government Code Section 82.039—that he contends affects his "rights, status, or other legal relations," *see* Tex. Civ. Prac. & Rem. Code § 37.004(a), we have already determined that he does not have standing to pursue a claim for the declaration because he cannot show that obtaining it will redress any past or imminent injury, given that Board Members have absolute discretion to decide waiver requests irrespective of the guidelines' provisions. We conclude, therefore, that the trial court did not err in granting the Board Members' plea to the jurisdiction as to Sonnenschein's UDJA claims.

**CONCLUSION**

We affirm the trial court's order granting the Board Members' plea to the jurisdiction and rendering judgment in their favor in all respects except for Sonnenschein's claims for violations of his rights to equal protection, which claims we reverse and remand to the trial

court to allow Sonnenschein an opportunity to amend his pleadings to invoke the trial court's subject-matter jurisdiction and for further proceedings consistent with this opinion.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed in Part; Reversed and Remanded in Part

Filed:   November 30, 2023